RCH/SPN/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -                       No. 21-CR-371 (S-1) (BMC)

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
       also known as "Rashid Al Malik"
       and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS <u>IN LIMINE</u> TO ADMIT CERTAIN EVIDENCE
<u>AND PRECLUDE CERTAIN EVIDENCE AND ARGUMENTS AT TRIAL</u>

                                 BREON PEACE
                                 United States Attorney
                                 Eastern District of New York

Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

RELEVANT BACKGROUND ............................................................................................... 3

ARGUMENT ......................................................................................................................... 5

I.   The Court Should Admit Certain of Defendant Matthew Grimes's
     Statements Made to the Grand Jury ............................................................................... 5

     A. Legal Standard ......................................................................................................... 5

     B. Grimes's Grand Jury Testimony is Admissible Against Him at Trial ........................ 6

     C. The Government's Proposed Redactions and Substitutions of
        Grimes' Grand Jury Testimony Are in Accordance with Second Circuit Law .......... 6

     D. The Court Should Preclude Defendants from Admitting Additional
        Portions of Grimes's Grand Jury Testimony Under the Rule of Completeness .......... 9

II.  Notes and Draft Messages Created by Al Malik About the Status and
     Progress of the Conspiracy Are Admissible Co-Conspirator Statements ...................... 11

     A. The Notes ............................................................................................................... 13

     B. Legal Standard ....................................................................................................... 14

     C. Al Malik's Notes Are Admissible at Trial as Statements in
        Furtherance of the Charged Conspiracy ................................................................. 16

III. The Court Should Admit Evidence of Former Congressman
     ███████ ███████ Arrest ........................................................................................ 21

     A. Relevant Factual Background ................................................................................. 22

     B. ███████ Arrest on March 16 is Relevant ........................................................... 23

IV.  The Court Should Preclude Evidence or Argument Suggesting
     Selective Prosecution or Impuging or Otherwise Challenging the
     Government's Conduct of the Investigation ................................................................. 24

     A. Relevant Factual Background ................................................................................. 25

     B. Legal Standard ....................................................................................................... 27

     C. The Court Should Preclude the Defendants from Offering Evidence
        or Arguing Selective Prosecution or Improper Motive ........................................... 28

V.   The Court Should Preclude Evidence or Argument That the Defendants
     Satisfied Section   951's Notice Requirement Through Other Government Officials ..... 30

CONCLUSION.................................................................................................................... 32

TABLE OF AUTHORITIES

**Cases**

Bourjaily v. United States,
　483 U.S. 171 (1987).........................................................................14

Crawford v. Washington,
　541 U.S. 36 (2004)............................................................................6

In re Terrorist Bombings of U.S. Embassies in East Africa,
　552 F.3d 93 (2d Cir. 2008)...........................................................6, 14

Richardson v. Marsh,
　481 U.S. 200 (1987)..........................................................................8

Ryan v. Miller,
　303 F.3d 231 (2d Cir. 2002)..............................................................6

United States v. Armstrong,
　517 U.S. 456 (1996)........................................................................29

United States v. Ashburn,
　76 F. Supp. 3d 401 (E.D.N.Y. 2014) ..........................................7, 8, 9

United States v. Ashraf,
　320 F. App'x 26 (2d Cir. 2009) ........................................................16

United States v. Blake,
　195 F. Supp. 3d 605 (S.D.N.Y. 2016)..............................................10

United States v. Bruton,
　391 U.S. 123 (1968)..........................................................................6

United States v. Davidson,
　308 F. Supp. 2d 461 (S.D.N.Y. 2004)................................................5

United States v. Defreitas,
　701 F. Supp. 2d 309 (E.D.N.Y. 2010) ...............................................6

United States v. Donovan,
　55 F. App'x 16 (2d Cir. 2003) ....................................................16, 17

United States v. Farhane,
　634 F.3d 127 (2d Cir. 2011)............................................................29

United States v. Fawwaz,
　694 F. App'x 847 (2d Cir. 2017) ......................................................16

United States v. Geaney,
　417 F.2d 1116 (2d Cir. 1969)..........................................................21

United States v. Gonzalez,
　399 F. App'x 641 (2d Cir. 2010) .................................................10, 11

United States v. Gotti,
　457 F. Supp. 2d 395 (S.D.N.Y. 2006)..........................................10, 11

iii

United States v. Gupta,
  747 F.3d 111 (2d Cir. 2014).................................................................... 14, 15, 16

United States v. Harper,
  No. 05–CR–6068L, 2009 WL 140125 (W.D.N.Y. Jan. 20, 2009) ......................... 10

United States v. Harris,
  167 F. App'x 856 (2d Cir. 2006) ..................................................................... 6

United States v. Jackson,
  180 F.3d 55 (2d Cir. 1999)............................................................................ 11

United States v. James,
  712 F.3d 79 (2d Cir. 2013)............................................................................ 16

United States v. Jass,
  569 F.3d 47 (2d Cir. 2009).................................................................... 7, 8, 9

United States v. Johnson,
  507 F.3d 793 (2d. Cir. 2007)................................................................... 10, 11

United States v. Knox,
  687 F. App'x 51 (2d Cir. 2017) .................................................................... 28

United States v. Kurland,
  No. 20 CR 306 (S-1) (NGG), 2022 WL 2669897 (E.D.N.Y. July 11, 2022) ......... 15

United States v. Loera,
  No. 09 CR 466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) ................... 21

United States v. Lyle,
  919 F.3d 716 (2d Cir. 2019)........................................................................... 7

United States v. Mahaffy,
  No. 05-CR-613, 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007) ............................ 10

United States v. Maldonado-Rivera,
  922 F.2d 934 (2d Cir. 1990)......................................................................... 15

United States v. Malka,
  No. 19 CR 497 (NSR), 2022 WL 1488568 (S.D.N.Y. May 11, 2022)................... 15

United States v. Marin,
  669 F.2d 73 (2d Cir. 1982).................................................................... 9, 10

United States v. Monsalvatge,
  850 F.3d 483 (2d. Cir. 2017)......................................................................... 23

United States v. Persico,
  No. 04-CR-911 (JS), 2007 WL 9759642 (E.D.N.Y. Nov. 6, 2007) ........................ 15

United States v. Pike,
  292 F. App'x 108 (2d Cir. 2008) ..................................................................... 6

United States v. Preldakaj,
  456 F. App'x 56 (2d Cir. 2012) ..................................................................... 27

iv

United States v. Regan,
　　103 F.3d 1072 (2d Cir. 1997).............................................................. 29

United States v. Rivera,
　　22 F.3d 430 (2d Cir. 1994)................................................................... 15

United States v. Rosado,
　　728 F.2d 89 (2d Cir.  1984) ...................................................... 27, 28, 29

United States v. Russo,
　　302 F.3d 37 (2d Cir. 2002)............................................................ 15, 17

United States v. Saldarriaga,
　　204 F.3d 50 (2d Cir. 2000)................................................................. 27

United States v. SKW Metals & Alloys, Inc.,
　　195 F.3d 83 (2d Cir. 1999)................................................................. 14

United States v. Tarantino,
　　846 F.2d 1384 (D.C. Cir. 1988) ......................................................... 15

United States v. Taylor,
　　745 F.3d 15 (2d Cir. 2014)................................................................. 7, 8

United States v. Thai,
　　29 F.3d 785 (2d Cir. 1994)................................................................. 16

United States v. Thomas,
　　116 F.3d 606 (2d Cir. 1997)............................................................... 30

United States v. Tracy,
　　12 F.3d 1186 (2d Cir. 1993)............................................................... 21

United States v. Tutino,
　　883 F.2d 1125 (2d Cir. 1989)............................................................ 7, 8

United States v. Williams,
　　936 F.2d 698 (2d Cir. 1991)................................................................. 8

United States v. Yousef,
　　327 F.3d 56 (2d Cir. 2003)................................................................. 10

**Statutes**

18 U.S.C. § 951(a) ...................................................................................... 30

**Rules**

Federal Rule of Criminal Procedure 12(b)(3)(A) ..................................... 29

Federal Rule of Evidence 104(a) .............................................................. 14

Federal Rule of Evidence 1101(d)(1) ........................................................ 14

Federal Rule of Evidence 401 ................................................................... 23

Federal Rule of Evidence 403 ................................................................... 24

Federal Rule of Evidence 801(a) .............................................................. 14

Federal Rule of Evidence 801(d)(2)(A) ............................................................................ 5, 6

Federal Rule of Evidence 801(d)(2)(E) ....................................................................... 12, 14, 16

**Regulations**

28 C.F.R. § 73.3(a) ........................................................................................................... 30

28 C.F.R. § 73.3(b) ........................................................................................................... 31

28 C.F.R. 73.3(e) ......................................................................................................... 29, 31

**Constitutional Provisions**

U.S. CONST. amend. VI ....................................................................................................... 5

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions in limine to introduce into evidence at trial (1) certain statements made by the defendant Matthew Grimes (together with the defendant Thomas J. Barrack, the "Defendants") to a federal grand jury; (2) certain statements made by co-defendant Rashid Sultan Rashid Al Malik Alshahhi ("Al Malik") in the form of notes he wrote on his cellphone documenting his and his co-conspirators' work to advance the interests of the United Arab Emirates ("UAE"); and (3) evidence that former Congressman ███████    ███████ was arrested soon after the UAE government directed the Defendants to meet with ███████ and advocate for his appointment as U.S. Ambassador to the UAE.  Grimes's statements are admissible against Grimes pursuant to Federal Rule of Evidence 801(d)(2)(A) as admissions of a party opponent.[1]  The government moves to admit the statements in redacted form, with an appropriate limiting instruction, to protect Barrack's confrontation rights.  See Bruton v. United States, 391 U.S. 123 (1968).  The government also seeks a related order precluding introduction by the Defendants of additional portions of Grimes's testimony before the grand jury, as such testimony is barred by the rule against hearsay when sought to be introduced by the defense.  Al Malik's notes are relevant and admissible pursuant to Rule 801(d)(2)(E) as statements of a co-conspirator of the Defendants, made during and in furtherance of the charged conspiracy.  Evidence of ███████ arrest is relevant to establishing why the Defendants were unable to follow through on the UAE's direction regarding advocacy for his ambassadorial appointment.

---

[1] This brief has been filed publicly in redacted form, to protect materials covered by the protective order entered on July 28, 2021.  See ECF No. 27.  An unredacted version of the brief has been filed under seal.

The government also moves to preclude the Defendants from introducing evidence or advancing arguments at trial suggesting (1) that the government engaged in selective prosecution or acted with an improper motive in this case, including evidence or arguments relating to other cases or circumstances in which (a) the government did or did not charge violations of Section 951 or (b) other individuals did or did not notify the Attorney General of the Defendants' actions as agents in the United States; or (2) that notification of campaign, transition, or U.S. government officials of their conduct in the United States on behalf of the UAE constituted constructive notice to the Attorney General or otherwise satisfied the notification requirement set forth in Section 951.   Evidence or argument relating to the government's motives or conduct during the investigation is irrelevant and presents an undue risk of juror confusion or jury nullification.   Such evidence must therefore be excluded pursuant to the balancing required under Rule 403 of the Federal Rules of Evidence.   With respect to notification, Section 951 is clear that notification must be made to the Attorney General, not some other person.

For the reasons set forth herein, the government's motions in limine should be granted.

RELEVANT BACKGROUND

The Defendants and Al Malik are charged in a superseding indictment (the "Indictment") returned on May 16, 2022, by a grand jury sitting in the Eastern District of New York with one count of acting as agents of the UAE without prior notice to the Attorney General, in violation of 18 U.S.C. §§ 951(a) and 2, and one count of conspiring to do the same, in violation of 18 U.S.C. § 371.   Ind. ¶¶ 113-17 (ECF No. 105).   Barrack also was charged with one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2), and six counts of making materially false statements, in violation of 18 U.S.C. § 1001(a)(2).   Id. ¶¶ 118-31.

The charges arose from the Defendants' and Al Malik's illegal agreement to act in the United States at the direction of government officials in the UAE between approximately April 2016 and April 2018, their actual commission of that illegal objective, and their efforts to aid and abet one another in so acting.   The Defendants engaged in a range of conduct at the direction of the UAE government and did so in part by accessing the highest levels of Donald J. Trump's campaign to become President of the United States (the "Trump Campaign") and the Trump Administration.

During the campaign, Barrack and Grimes, working through Al Malik, made contact with senior UAE national security officials and, at their direction, agreed to influence public opinion in the United States and the foreign policy positions of the Trump Campaign, relay non-public information about the foreign policy positions and decisions of the Trump Campaign, develop a backchannel line of communication to the Trump Campaign on behalf of the UAE government, and design plans to increase the UAE's political influence and promote its foreign policy preferences.   Id. ¶¶ 14-53.   Upon the election of President Trump and during the Trump Administration, the Defendants and Al Malik agreed to provide UAE officials with non-public

3

information about potential appointments by President-Elect Trump to Cabinet-level positions; discussed a plan to influence U.S. foreign policy in the first 100 days, the first six months, year and the entire four years of the incoming Trump Administration; arranged calls between a senior UAE official and President Trump; agreed to advocate for a UAE-favored individual to be appointed to a senior position in the Trump Administration; and provided non-public information to Al Malik and UAE officials about internal discussions in the Trump Administration concerning the blockade of Qatar by the UAE and other Middle Eastern governments.   Id.   Barrack, Grimes, and Al Malik never notified the Attorney General that they were acting as agents of the UAE government.[2]

In connection with the charged conspiracy, the evidence at trial will establish that the Defendants' and Al Malik's co-conspirators included senior UAE national security officials and their staff, such as ███████████████████████████████████████████ ████████████████.   The evidence will demonstrate that the conspiratorial relationship involved a network of individuals.   For example, many of the directions were passed from senior UAE officials, through ████████████, to Al Malik, then to Grimes, who finally passed the messages to Barrack.   Reporting from Barrack and Grimes would often be returned through those same channels.   Due in part to the complexity and particular aims of the conspiracy, Al Malik took notes to keep track of aspects of the scheme, to store information for later consideration, and to prepare messages to his fellow conspirators.

On June 20, 2019, after Barrack became aware that he was being investigated by the FBI for his actions at the behest of the UAE, Barrack arranged and participated in a voluntary

---

[2] The government refers the Court to the allegations set forth in the Indictment for further detail on the Defendants' conduct and the scope of their conspiratorial agreement, including extensive quotations from, and context for, communications among the charged conspirators.

interview with the FBI and the U.S. Attorney's Office for the Eastern District of New York. During the interview, Barrack repeatedly and materially lied about the events and activities that underlie Count One and Count Two of the Indictment.   Those lies underpin Counts Three through Nine of the Indictment.

ARGUMENT

I.    <u>The Court Should Admit Certain of Defendant Matthew Grimes's Statements Made to the Grand Jury</u>

On March 23, 2018, and again on April 6, 2018, Grimes testified before a federal grand jury in the District of Colombia.   The government moves to admit portions of Grimes's grand jury testimony, attached herein as Exhibit A, and to preclude admission of any such statements by the Defendants.   The portions of Grimes's grand jury testimony specified below and in Exhibit A are admissible against Grimes pursuant to Federal Rule of Evidence 801(d)(2)(A) as admissions of a party-opponent, and to the extent necessary, are redacted pursuant to <u>Bruton</u>.

    A.    <u>Legal Standard</u>

It is well-settled that the government generally may introduce a defendant's statements into evidence because a statement is not hearsay if it is "offered against an opposing party and . . . was made by the party in an individual or representative capacity."   Fed. R. Evid. 801(d)(2)(A).   A defendant, however, may not do the same in an "attempt to get [his] side of the . . . story in front of the jury without him[self] testifying and opening him[self] up to cross-examination."   <u>United States v. Davidson</u>, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."   U.S. CONST. amend. VI.   "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand

5

against the defendant and is available for cross examination." <u>Ryan v. Miller</u>, 303 F.3d 231, 247

(2d Cir. 2002) (citing <u>Bruton v. United States</u>, 391 U.S. 123, 128 (1968)).   The Confrontation

Clause (and the protections of <u>Bruton</u>) only apply to the use of "testimonial statements" offered

for their truth.   <u>Crawford v. Washington</u>, 541 U.S. 36, 68-69 (2004); <u>United States v. Pike</u>, 292 F.

App'x 108, 112 (2d Cir. 2008) ("[B]ecause the statement was not testimonial, its admission does

not violate either <u>Crawford</u> . . . or <u>Bruton.</u>").

      B.   <u>Grimes's Grand Jury Testimony is Admissible Against Him at Trial</u>

      The government seeks to admit certain statements made by Grimes to the grand

jury as admissions by a party opponent.   <u>See</u> Fed. R. Evid. 801(d)(2)(A).   Grimes's statements

that do not reference Barrack raise no Confrontation Clause issues, provided a limiting instruction

makes clear that they are admitted only as to Grimes.   "[E]ven where multiple defendants are

charged with the same crimes, the use of an out-of-court admission does not violate the

Confrontation Clause when accompanied by an instruction limiting its admissibility as against the

declarant defendant."   <u>United States v. Defreitas</u>, 701 F. Supp. 2d 309, 315 (E.D.N.Y. 2010)

(citing <u>In re Terrorist Bombings of U.S. Embassies in East Africa</u>, 552 F.3d 93, 135–37 (2d Cir.

2008)); <u>see also</u> <u>United States v. Harris</u>, 167 F. App'x 856, 859 (2d Cir. 2006)

(where statements were offered only against declarant and accompanied by proper jury instruction,

there was no Confrontation Clause issue).

      C.   <u>The Government's Proposed Redactions and Substitutions of Grimes' Grand Jury Testimony Are in Accordance with Second Circuit Law</u>

      To the extent the government seeks to admit for their truth portions of Grimes's

grand jury testimony that reference Barrack, these remaining statements will be offered into

evidence only after properly sanitizing them to remove all references to Barrack and ensuring that

they fully comport with <u>Bruton</u>.

The Second Circuit has made clear that "'a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's Bruton rights.'"   United States v. Jass, 569 F.3d 47, 56 (2d Cir. 2009) (quoting United States v. Tutino, 883 F.2d 1125, 1135 (2d Cir. 1989)); see also United States v. Lyle, 919 F.3d 716, 734 (2d Cir. 2019) (upholding redactions where terms "individual" and "person" were substituted for proper names).   In the Second Circuit, courts apply a two-step analysis in determining whether the redactions and alterations are adequate: (1) whether the redacted confession "indicat[ed] to the jury that the original statement contained actual names," and (2) whether the redacted confession, even if "the very first item introduced at trial" would "immediately" inculpate the defendant in the charged crime.   See Jass, 569 F.3d at 61.

Consistent with this approach, courts in this Circuit have allowed proper names to be replaced with the following terms (among others): "another person," "others," "other people," and "another person," the pronoun "he," "this guy," "another guy," "similar language," and "friend."   See United States v. Taylor, 745 F.3d 15, 28-29 (2d Cir. 2014) (collecting cases) (internal citations omitted).   These examples reflect that the purpose of the substitutions is not to eliminate references to the existence of a confederate but, rather, to use words "that might actually have been said by a person admitting his own culpability in the charged conspiracy while shielding the specific identity of his confederate."   United States v. Ashburn, 76 F. Supp. 3d 401, 420 (E.D.N.Y. 2014) (quoting Taylor, 745 F.3d at 28) (internal quotation marks omitted) (upholding the government's proposed redactions and substitutions replacing all references to the co-defendant's name with "the guy," "the other guy," and a "guy he knows."); see also Tutino,

883 F.2d at 1135 (2d Cir. 1989) (approving use of "others," "other people," and "another person" for names of co-defendants in confession of non-testifying defendant).

Importantly, it does not matter if the jury may be able to draw inferences about the codefendant when the sanitized statement is considered along with other evidence in the case. The "critical inquiry is . . . not whether a jury might infer from other facts (whether evidence admitted at trial or circumstances such as the number of defendants on trial) that a declarant's neutral allusion to a confederate might have referenced the defendant." Ashburn, 76 F. Supp. 3d at 421 (quoting Jass, 569 F.3d at 61). Rather, "the appropriate analysis to be used when applying the Bruton rule requires that [the court] view the redacted confession in isolation from the other evidence introduced at trial." United States v. Williams, 936 F.2d 698, 700 (2d Cir. 1991). "If the confession, when so viewed, does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant." Id. at 701; see also Jass, 569 F.3d at 62 ("In making this determination, we view the redacted statement in isolation to evaluate its impact on a jury.") (citing Richardson v. Marsh, 481 U.S. 200, 208–09 (1987)). Thus, the Court's analysis must be as to whether Grimes' redacted statement, viewed in isolation from all other evidence, incriminated Barrack.

The government has proposed redactions and substitutions to Grimes's statements in accordance with this well-settled Supreme Court and Second Circuit law. See Exhibit A. Under Taylor's two-step inquiry, the government's redaction of Grimes' statements alleviate any Confrontation Clause concerns.

First, the redacted statements do not indicate that the original statement contained actual names. The government replaced Barrack's name with variations of neutral pronouns or

other generic references, consistent with Second Circuit precedent.    See Ashburn, 76 F. Supp. 3d at 421; see also Jass, 569 F.3d at 62 (holding that use of "other person" in lieu of co-defendant's name "neither manifested obvious indications of alteration, nor otherwise signaled to the jury that the statements had originally contained actual names.") (citations and internal quotation marks omitted).   Second, each redacted statement, if it were "the very first item introduced at trial," would not "immediately" inculpate Barrack in the charged crime.   Jass, 569 F.3d at 61.   As the Second Circuit has held, even in a case with only two co-defendants, a redacted statement that necessarily links the defendants is admissible.   See id.   In Jass, one defendant confessed and implicated his co-defendant by name several times in the confession.   Id. at 63.   The government redacted the co-defendant's name from the confession and replaced it with "the other person."   Id. at 53.   The co-defendant argued that the jury would infer in a two-defendant conspiracy trial that the "other person" in the confession was the co-defendant.   The Second Circuit rejected this argument, holding that, when viewed in isolation, "it would not have been immediately apparent to a jury that heard only [the defendant's] redacted references to 'another person' that he was specifically inculpating [his co-defendant] in the [crime]   The 'other person' could have been anyone."   Id. at 62.   The same is true here.

D.    The Court Should Preclude Defendants from Admitting Additional Portions of Grimes's Grand Jury Testimony Under the Rule of Completeness

The Court should not permit the defendants to admit other portions of Grimes's grand jury testimony, either on cross-examination or in their case-in-chief, because such testimony would constitute hearsay without any exception.   A defendant generally is prohibited from introducing his own out-of-court statements at trial.   See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When [a] defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); United States v. Blake, 195 F. Supp. 3d

605, 610 (S.D.N.Y. 2016) ("'[W]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.'") (citing Marin, 669 F.2d at 84). Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay." United States v. Mahaffy, No. 05-CR-613, 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007) (internal quotation marks omitted); see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) (holding that "while the Government was free to introduce the statement as an admission by a party opponent, [the defendant] had no right to introduce it on his own" (citations omitted)).

Nor is such testimony admissible pursuant to the rule of completeness. Under Federal Rule of Evidence 106, courts only permit inclusion of otherwise hearsay testimony where it is "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact." United States v. Gotti, 457 F. Supp. 2d 395, 397–98 (S.D.N.Y. 2006). Thus, under Rule 106, self-serving exculpatory statements are not admissible by a defendant unless "their exclusion would unfairly distort the meaning of the declarant's non-hearsay statements that are in evidence." United States v. Harper, No. 05–CR–6068L, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009).

To that end, the Second Circuit has excluded hearsay statements offered by the defendant that, by their omission, do not distort the admitted statements. See United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2010) (affirming district court's decision to exclude portion of a defendant's statement where admitted portion did not distort the meaning of the full statement); United States v. Johnson, 507 F.3d 793, 796 (2d. Cir. 2007) (affirming district court's decision to exclude portions of confession that did not explain the admitted portion or place the admitted portion in context, noting that while "[t]he admitted portion of the confession related to

10

... plans to execute the robbery, ... the redacted portion related to the execution of the robbery"). Rule 106 does not generally "compel admission of otherwise inadmissible hearsay evidence," Gotti, 457 F. Supp. 2d at 398, and the rule of completeness is "not a mechanism to bypass hearsay rules for any self-serving testimony." Gonzalez, 399 F. App'x at 645. As the Second Circuit has explained, a defendant may not introduce other parts of the same statement offered in part by the government unless the defendant makes a proper showing that the statements she seeks to introduce have a separate basis for admission. See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that part of a statement made by the defendant could be admitted because the statement followed an inculpatory admission and noting that "the portions of the tape proffered by [the defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay"). The completeness doctrine does not "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." Johnson, 507 F.3d at 796 (citations omitted).

Here, as detailed in Exhibit A, the government has carefully included context for the statements it seeks to admit. The remaining portions of the Grimes's testimony are not essential to explain the admitted statements, and preclusion of such statements would not distort the meaning of the admitted statements.

## II. Notes and Draft Messages Created by Al Malik About the Status and Progress of the Conspiracy Are Admissible Co-Conspirator Statements

The government moves to admit into evidence at trial certain statements made by the Defendants' co-conspirator Al Malik in furtherance of the charged conspiracy in the form of "notes" taken on Al Malik's cellphone. These notes document aspects of Al Malik's and the Defendants' work to advance the interests of the UAE and reflect draft messages to other

conspirators.[3]   The statements at issue are attached hereto as Exhibit B (containing five individual notes marked collectively for trial as Government Exhibit 509-A).   Taken in context, most of the notes clearly appear to have been written by Al Malik in preparation to relay information to a UAE government official following meetings and conversations between Al Malik and Barrack; other notes document Al Malik's ideas and items to remember in connection with his efforts to advance UAE interests with the assistance of Barrack and Grimes.   The notes are highly probative of the charged conduct.   Specifically, they (1) help to establish the relationships among the conspirators, (2) demonstrate the UAE's use of Barrack to obtain information regarding deliberations inside the Trump campaign and Trump Administration, and (3) discuss aspects of UAE foreign policy objectives that other evidence establishes the UAE sought to carry out through the use of Al Malik, Barrack, and Grimes as agents in the United States.

Some of the notations arguably are not assertions, and therefore would fall outside the bar on hearsay.   Other notations likely will not be introduced for their truth but, rather, for the fact of they were stated.   In any event, and without foregoing other independent bases of admissibility, the government submits that the notes are admissible as co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).[4]

---

[3]   The government uses the term "note" herein to refer to a single electronic document created on a cellphone using an application designed to permit taking and preservation of notes. Each "note" contains within it a series of statements or notations.

[4]   While the government was preparing this motion in limine, the Defendants filed their own motion seeking to preclude introduction of the notes at issue.   Although this motion affirmatively addresses many of the Defendants' arguments, the government will respond directly to the Defendants' particular (and meritless) arguments in an omnibus response to the multiple pending defense motions in limine.

A.      The Notes

The government seeks to admit into evidence five notes written by Al Malik on his cellphone.   The following are brief summaries of the contents of the notes, in chronological order.[5]



_____

[5] The title of each note is the first line of the substance of the note, in bold.   Some of the spacing in the notes has been cleaned up for purposes of this motion.   The government reserves the option to seek to introduce additional notes – of Al Malik or others – on the same basis.

B.    Legal Standard

1.    Co-Conspirator Statements

A statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party's co-conspirator during and in furtherance of the conspiracy."   Fed. R. Evid. 801(d)(2)(E).   To admit such statements, a court must find by a preponderance of the evidence that (i) "there was a conspiracy"; (ii) "its members included the declarant and the party against whom the statement is offered"; and (iii) "the statement was made during the course of and in furtherance of the conspiracy."   United States v. Gupta, 747 F.3d 111, 123 (2d Cir. 2014). Written as well as oral statements of a co-conspirator, if made in the course of and in furtherance of the conspiracy, are admissible under Rule 801(d)(2)(E).   See, e.g., United States v. SKW Metals & Alloys, Inc., 195 F.3d 83, 88 (2d Cir. 1999) (citing Fed. R. Evid. 801(a)).   In determining whether a party has established a proper foundation for admission of co-conspirator statements, a court may consider hearsay and other evidence not admissible at trial, including the proffered statements themselves.   See Fed. R. Evid. 104(a), 1101(d)(1); Bourjaily v. United States, 483 U.S. 171, 178-81 (1987).   "Because what constitutes a statement that is in furtherance of a conspiracy is essentially a question of fact, [an appellate court] will reverse a decision to admit co-conspirator statements only if it is clearly erroneous."   In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d at 139 (internal quotation marks omitted).

a.   The Conspiracy Requirement

With respect to the first requirement, "[i]n determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the

14

statement, as well as the contents of the alleged coconspirator's statement itself."   Gupta, 747 F.3d at 123.   Through this evidence, the government must establish the existence of a conspiracy in which the declarant and the defendant participated.   See United States v. Maldonado-Rivera, 922 F.2d 934, 958 (2d Cir. 1990).   The conspiracy that serves as the basis for admission of coconspirator statements may, but need not, be a conspiracy alleged in the indictment.   See United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002).   Indeed, the conspiracy that serves as the basis for admission of co-conspirator statements can be a broader conspiracy that that charged in indictment.   See United States v. Persico, No. 04-CR-911 (JS), 2007 WL 9759642, at *3 (E.D.N.Y. Nov. 6, 2007) (holding that "the statement in question need not further the charged conspiracy" and that, in context of mafia prosecution, statement was admissible because it was "made during the course and in furtherance of the larger conspiracy of La Cosa Nostra").

b.   The "In Furtherance" Requirement

"The requirement that the challenged statement be 'in furtherance of' the conspiracy is satisfied if the statement's objective is 'designed to promote or facilitate achievement of the goals of the conspiracy.'"   United States v. Malka, No. 19 CR 497 (NSR), 2022 WL 1488568, at *13 (S.D.N.Y. May 11, 2022) (quoting United States v. Rivera, 22 F.3d 430, 436 (2d Cir. 1994)).   Courts in this district have repeatedly held that this standard is "is not very restrictive."   United States v. Kurland, No. 20 CR 306 (S-1) (NGG), 2022 WL 2669897, at *3 (E.D.N.Y. July 11, 2022) (citing Malka, 2022 WL 1488568, at *13)).   "It permits, for example, introduction of any co-conspirator statement that 'reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy.'"   Malka, 2022 WL 1488568, at *13 (citing United States v. Tarantino, 846 F.2d 1384, 1412 (D.C. Cir. 1988)).   Even "statements relating past events

15

meet the in-furtherance test if they serve some current purpose in the conspiracy."   United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994); see also United States v. James, 712 F.3d 79, 106 (2d Cir. 2013).   "[S]o long as a coconspirator statement was in furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular coconspirator."   Gupta, 747 F.3d at 124.

Importantly, nothing in the text of Rule 801(d)(2)(E) or in caselaw interpreting the Rule's scope requires that a statement be communicated to any other member of the conspiracy to qualify as a co-conspirator statement, so long as it was made during and in furtherance of the conspiracy and is admitted against a member of the conspiracy.   See, e.g., United States v. Fawwaz, 694 F. App'x 847, 851 (2d Cir. 2017) (holding that list containing "information regarding the current status of the conspiracy and its membership [was] sufficiently in furtherance of a conspiracy"); United States v. Ashraf, 320 F. App'x 26, 29 (2d Cir. 2009) (affirming admission of drug ledgers pursuant to Rule 801(d)(2)(E)); United States v. Donovan, 55 F. App'x 16, 22 (2d Cir. 2003) (affirming admission of a ledger and a list, each kept by individual conspirators, during the course of securities fraud conspiracy to track certain commission payments, thereby "further[ing] the operations and efficiency of the conspiracy").

C.   Al Malik's Notes Are Admissible at Trial as Statements in Furtherance of the Charged Conspiracy

Al Malik's notes are probative of the charged offenses and easily satisfy the applicable legal standard for admission of co-conspirator statements pursuant to Rule 801(d)(2)(E).   Accordingly, the Court should admit the statements into evidence at trial.

The Defendants are charged with conspiring to act in the United States as agents of the UAE without prior notification to the Attorney General, and the evidence will establish that conspiracy beyond a reasonable doubt, well beyond the preponderance standard required to permit

16

admission of the statements at issue.   The evidence also will establish that, as alleged in detail in the Indictment, Al Malik and Barrack, the declarants of the statements at issue, were members of the charged conspiracy.

It is self-evident that the notes contained in Government Exhibit 509-A were made by Al Malik during the course of the charged conspiracy, as the dates of the notes place them squarely within the alleged timeframe of that conspiracy.   Moreover, the substantive contents of the notes on their own – and particularly when considered in the context of other evidence of Al Malik's and the Defendants' conduct during the same timeframe – establish that Al Malik's purpose in making the notes was to further the objectives of the charged conspiracy by (1) ensuring that he, Al Malik, would be in a position to relay details of his conversations with Barrack to Al Malik's superiors in the UAE, and (2) serving as a repository of Al Malik's ideas and plans for furthering the interests of the UAE in the United States, permitting him to remember and further refine such plans.   See, e.g., Donovan, 55 F. App'x at 22 (affirming introduction of ledger and list generated "as ways to keep track of the commissions to the coldcallers, thereby indicating that the documents furthered the operations and efficiency of the conspiracy"); Russo, 302 F.3d at 46 (observing that the operation of a criminal conspiracy "requires that information be passed among interested persons").   In a complex scheme such as this one, the conspiracy could only be effectively furthered if an intermediary like Al Malik took steps to develop, keep track of, and report accurately on his and the Defendants' criminal conduct.

a.   The December 3, 2016 Note

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

      b.  <u>The December 11, 2016 Note</u>

          ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

c.   The September 22, 2017 Note

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████

d.   The October 11 and 13, 2017 Notes

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████



\*       \*       \*

The notes must be viewed in the broader context of the near-daily communication among Al Malik, Grimes, and Barrack, and of Al Malik's consistent communication with his handlers in the UAE, particularly ███████████, to provide updates on Al Malik's efforts in the United States and to receive further direction.   Although many of the notes and surrounding circumstances bear substantial indicia that the contents of these notes were, in fact, delivered to UAE officials, whether the notes themselves were, in fact, ever shown or delivered to another member of the conspiracy is of no moment; they were made in furtherance of the conspiracy in that they function much like a list kept by a conspirator to help him remember information relevant to advancing the conspiracy, or an address book kept to remind a conspirator of names of others in the conspiracy, or a drug ledger.   The Second Circuit has routinely approved admission of similar documents as co-conspirator statements pursuant to Rule 801(d)(2)(E). See, e.g., Fawwaz, 694 F. App'x at 851 (holding that a list containing "information regarding the current status of the conspiracy and its membership [was] sufficiently in furtherance of a conspiracy"); Ashraf, 320 F. App'x at 29 (affirming admission of drug ledgers pursuant to Rule 801(d)(2)(E)); United States v.

<u>Orena</u>, 32 F.3d 704, 715 (2d Cir. 1994) (loansharking records listing "names and numbers with notations such as 'collect,' 'paid,' and 'balance'"); <u>United States v. Panza</u>, 750 F.2d 1141, 1151 (2d Cir. 1984) (affirming admission of notebooks listing fraudulent insurance policies and corresponding bribe payments).

Accordingly, the Court should permit introduction of Government Exhibit 509-A into evidence at trial.[6]

III.    <u>The Court Should Admit Evidence of Former Congressman ███████ Arrest</u>

The government intends to introduce evidence at trial that the UAE government directed the Defendants to meet with, and advocate for the appointment of former Congressman ████████ to the position of U.S. Ambassador to the UAE in or about and between February 9, 2017 and March 15, 2017.   In connection with this request from the UAE, the government will seek to introduce evidence that ████████ was arrested soon thereafter, on or about March 16, 2017, on federal criminal charges unrelated to this case.   ████████ arrest is relevant because it explains why the Defendants were not able to fulfill this request, despite agreeing to do so. Without this information, the jury may mistakenly conclude that the Defendants willingly refused to follow through on the UAE's direction, when, in fact, circumstances beyond their control deprived them of the opportunity to do so.

---

[6] The government respectfully proposes that the Court follow the procedure set forth in <u>United States v. Geaney</u>, 417 F.2d 1116 (2d Cir. 1969), pursuant to which "statements proffered as coconspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence establishing that a conspiracy existed, that the defendant and the declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy." <u>United States v. Tracy</u>, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing <u>Geaney</u>) (internal quotation marks omitted), <u>accord</u> <u>United States v. Loera</u>, No. 09 CR 466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018).

A.    <u>Relevant Factual Background</u>

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████

      B.       ███████████  <u>Arrest on March 16 is Relevant</u>

      Evidence is relevant and admissible if "it has any tendency to make a fact more or less probable than it would be without the evidence' and if 'the fact is of consequence in determining the action.'" <u>United States v. Monsalvatge</u>, 850 F.3d 483, 494 (2d. Cir. 2017) (quoting Fed. R. Evid. 401).

      The above-described facts directly relate to a specific tasking by the UAE government to the Defendants and the Defendants agreement to fulfill that tasking, the precise conduct with which the Defendants are charged.  Congressman ███████ arrest on the day immediately after Al Malik provided his name directly to Barrack and again to Grimes is directly relevant to the question of whether the Defendants willingly declined to complete a tasking from the UAE government, a "fact of consequence in determining the action." <u>See id.</u>

      As this Court recently held, "Section 951 prosecutions, as a practical matter, typically turn on whether a defendant acted as an agent within the meaning of the statute." ECF No. 166 at 6.  The fact that Al Malik provided the Defendants with ███████ resume and communicated the UAE's desire that Barrack meet with and advocate for ███████ appointment as the U.S. Ambassador to the UAE, and that the Defendants agreed to do so, is strong evidence that each "defendant acted as an agent within the meaning of the statute." <u>Id.</u>  Evidence of ███████ arrest, therefore, is necessary for the jury to understand the lack of additional evidence demonstrating the Defendants efforts to follow through on their agreement—███████ arrest essentially disqualified him from consideration.  The fact of ███████ arrest, while probative

23

of the failure of the Defendants to complete this tasking, is not unduly prejudicial to the Defendants.   The government will not seek to introduce any facts about the conduct ████ was alleged to have committed or the crimes with which he was charged.   Nor will the government suggest that either Defendant was involved in any way in that conduct.   In addition, the government would consent to a limiting instruction that ████ arrest has nothing to do with the charges against the Defendants and does not involve the Defendants.   As a result, the probative value of this evidence far outweighs any speculative prejudice and should be admitted.   See Fed. R. Evid. 403.

IV.    The Court Should Preclude Evidence or Argument Suggesting Selective Prosecution or Impugning or Otherwise Challenging the Government's Conduct of the Investigation

The Defendants have made statements suggesting that they may seek to introduce evidence or make arguments (1) that the government's prosecution was somehow politically motivated, selective, or otherwise conducted based on factors other than good faith enforcement of federal law and the pursuit of justice, or (2) that notifications to the Attorney General of agents acting in the United States on behalf of foreign governments are rare or a technicality without real-world import.   In addition to being factually inaccurate, any such evidence or argument would be irrelevant and would invite juror confusion and/or jury nullification.   Accordingly, evidence and arguments relating to the conduct of the government's investigation or details regarding enforcement or notification data, enforcement practices, or outcomes in unrelated cases should be precluded.

A.    <u>Relevant Factual Background</u>

The Defendants have made various statements indicating that they may seek to introduce evidence or advance arguments before the jury designed to challenge the government's motives and conduct in the investigation and prosecution of this case.   For example:

- In his motion to dismiss the indictment filed on January 31, 2022, ECF No. 67, Barrack urged dismissal in part based on the government's purportedly "unjustified two-year delay" in bringing charges.   Barrack stated that "the specter that the government intentionally delayed bringing this case for political reasons or tactical advantage hangs heavily over this case," suggested that the government "delayed indictment until a new presidential administration came into power," and cited "the very real potential that politics was a motivating force for the belated charges against Mr. Barrack," which, he argued, "offends fundamental conceptions of justice."   Br. at 3, 39 (internal quotation marks omitted).

- In the same brief, Barrack suggested the government acted improperly in its decision not to record Barrack's voluntary interview with the FBI on June 20, 2019, instead documenting the interview through handwritten notes and an FD-302.   Br. at 27-29.   Barrack also suggested that the government should have informed him that he was a target of the investigation – notwithstanding that Barrack requested the interview, Barrack's counsel did not request information about Barrack's status in the investigation, and the government informed Barrack's counsel in writing that he should draw no inferences about Barrack's status in the investigation.

- In his motion to dismiss the indictment filed on February 21, 2022, <u>see</u> ECF No. 756, Grimes argued that, although "Section 951 has existed in some form for more than a century, it has never before been used against a person in Mr. Grimes' position. Never." Br. at 1.   Grimes also referenced DOJ's handling of other (disanalogous) cases, citing to various advisory opinions issued by the DOJ regarding an entirely different criminal statute.   Br. at 20-22.

- In Barrack's Motion to Compel filed on March 21, 2022 (joined in part by Grimes), <u>see</u> ECF Dkt. Nos. 89, 91, Barrack again suggested that the government acted improperly in its handling of the interview of Mr. Barrack, stating that "despite knowing he was a target and having every incentive to create a meaningful record, the government chose not to memorialize or transcribe the actual questions or answers that make up any of the statements that it now alleges were false," rhetoric clearly meant to question the government's motives in taking the statements down in the manner it did.   Br. at 16.

- In his motion to compel, in a section joined by Grimes, Barrack suggested that if he were guilty someone would have done something sooner, writing that, "Given his role and access, federal intelligence agencies tasked with identifying foreign threats and protecting U.S. national security were either not aware of the information that was

known to the prosecutors, which is implausible, or else had additional information that led them to reach a different conclusion from the prosecutors on this case." Br. at 22.

- In his motion to dismiss the indictment, Barrack suggested that the circumstances of his arrest were unfair, arguing that "more than a dozen armed FBI agents burst into" an office where he was holding a meeting, and that his four-day stay in a California jail was improper.   Br. at 6.

The Defendants also have made statements suggesting they may introduce evidence regarding the number of Section 951 notifications filed with the Attorney General over the past decade in support of an argument that the statute is misunderstood, seldom enforced, and/or has resulted in selective prosecution in this case.   For example:

- Barrack has sued the U.S. Department of Justice seeking expedited consideration of a FOIA request filed with the Department's National Security Division on May 5, 2022 (nearly a year after the initial indictment was unsealed and more than five months after trial was scheduled) seeking, among other information: (1) any notification of registration as an agent of a foreign government under 18 U.S.C. § 951 by an individual or entity in each case in the last ten years; (2) a list of each individual or entity currently registered with DOJ under 18 U.S.C. § 951; and (3) any notification of termination and re-notification following such termination under 18 U.S.C. § 951 for the past ten years. See, e.g., Exped. Mot. for Prelim. Injunction, Barrack v. U.S. Dep't of Justice, 22-cv-01800 (D. Colo. July 21, 2022), ECF No. 2.   In connection with that litigation, Barrack has argued that the requested information "has a strong likelihood of constituting exculpatory evidence in connection with Mr. Barrack's upcoming [criminal] trial, and as such, is critical to the preservation of Mr. Barrack's due process rights."   Complaint, ECF No. 1, at 2.   He argued further that the information needed to be disseminated to the public "given the acknowledged confusion and ambiguity over the scope of 18 U.S.C. § 951(a) and when such charges are appropriate to be brought by federal prosecutors."[7]   Id.

- On July 25, 2022, Barrack filed a request under FOIA seeking expedited processing, referencing federal prosecutors' "repeated delays in providing exculpatory evidence via the judicial process" and the need for exculpatory information, and seeking wide-ranging categories of information, including, for example, any White House communications or documents referencing directly or indirectly topics or terms such

---

[7] The prosecution team has taken no position on the merits of Barrack's request for information under FOIA, but the scope of his right of access to the requested documents under FOIA, as a member of a public, has no bearing on the relevance or admissibility of such information in his criminal trial.

as the "Middle East", Iran, FARA, 951, DOJ or "the Department of Justice" and "investigation."

- In an email communication dated August 8, 2022, counsel for Barrack requested that the government provide the "number of 951 registrations the DOJ received in the last 10 years."

B.  Legal Standard

The Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed R. Evid. 402, 403.  Evidence that does not bear on a defendant's guilt or innocence of the charges in the Indictment or is likely to distract the jury from the issue of guilt or innocence, should be excluded.  See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial").

Courts have consistently held – and given jury instructions reflecting – that arguments regarding the government's decisions during an investigation and its motives and timing in bringing charges are irrelevant, unduly prejudicial, and improperly inviting of jury nullification.  See, e,g, United States v. Saldarriaga, 204 F.3d 50, 52 (2d Cir. 2000) (affirming jury charge stating that "[t]he government's function is to give enough evidence to satisfy you beyond a reasonable doubt that the charges are true, and the fact that there are a thousand other things they could have done is wholly irrelevant" (internal quotations and alterations omitted)); United States v. Preldakaj, 456 F. App'x 56, 60 (2d Cir. 2012) (affirming instruction that "[y]ou have heard reference, in the arguments of defense counsel in this case, to the fact that certain

27

investigative techniques were not used by law enforcement authorities[, but t]he government is not on trial, and law enforcement techniques are not your concern"); United States v. Knox, 687 F. App'x 51, 54-55 (2d Cir. 2017) (instructing jury that the "government is not on trial" is "appropriate" (internal quotation marks omitted)); Rosado, 728 F.2d at 93 (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt").

C.  The Court Should Preclude the Defendants from Offering Evidence or Arguing Selective Prosecution or Improper Motive

The Defendants should be precluded from offering evidence or argument that the government acted with an improper motive.  The Defendants' contentions that the government was motivated by politics, "delayed" the indictment until a change of administration to gain some political or tactical advantage, engaged in selective prosecution, failed to take appropriate steps to document Barrack's interview, or otherwise acted improperly are entirely meritless.   Indeed, this Court has already rejected several such arguments and should bar efforts to revive them before the jury.  See Mem. Dec. and Order (June 22, 2022), ECF No. 120, at 22 (holding it "irrelevant whether the government had 'ample notice'" of Barrack's voluntary interview and that "no extenuating circumstances impeded" recording the interview), 23, n.9 (stating that Grimes's reliance on DOJ Advisory Opinions under FARA was "misplaced" because "[n]onbinding advice on a different statute is irrelevant and confers no substantive or procedural rights on a defendant").

Any evidence or argument designed to suggest that the Defendants were specifically targeted by law enforcement based on their relationship with a particular administration or for some other improper reason is irrelevant and inadmissible.  "The Supreme Court has observed that a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons

forbidden by the Constitution.  Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)).  Any claim alleging a defect in instituting the prosecution based on alleged governmental motives must be raised with the Court in advance of trial.  Fed. R. Crim. P. 12(b)(3)(A); United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011).

Because the government's motive in bringing charges against a defendant is irrelevant to guilt, permitting the defense to argue improper motive would encourage the jury to decide the case based on something other than the elements of the charged crimes.  See, e.g., Rosado, 728 F.2d at 93 (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt").

For the same reason, the Court should preclude evidence or argument regarding (1) the government's decisions in other cases or instances involving Section 951, and (2) the number or nature of notifications made to the Attorney General pursuant to Section 951.   Whether some other individual did or did not notify the Attorney General, and how the Department of Justice handled any such notification or failure of notification, has no bearing on whether the Defendants violated the statute as alleged in the Indictment.   To the extent the Court were inclined to admit such evidence – and the government sees no basis to do so here – the government should then be permitted to introduce evidence related to notifications provided via registration under the Foreign Agents Registration Act (also called "FARA"), which satisfies notice under Section 951 (see 28 C.F.R. 73.3(e)), and particular examples thereof covering conduct tightly analogous to the conduct at issue in this case.   The jury cannot be misled by data cherry-picked to serve defense

purposes without the (highly inculpatory) accompanying context. Even if data regarding notifications over the past decade had some marginal probative value, that value would be substantially outweighed by the risk of juror confusion and inefficiency.

The Court should preclude such evidence and argument to prevent jury nullification. United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997) (holding that "trial courts have a duty to forestall or prevent jury nullification."); see also id. at 614 ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." (internal quotation marks and citation omitted)). In sum, the Court should preclude the introduction of irrelevant evidence to protect the jury from improper argument and related confusion.

V.    The Court Should Preclude Evidence or Argument That the Defendants Satisfied Section 951's Notice Requirement Through Other Government Officials

The government moves to preclude any evidence or argument in support of a claim that either defendant can be found not guilty because they provided notice to some U.S. government official other than the Attorney General.

Section 951 clearly states that an agent of a foreign government or official must provide "prior notification to the Attorney General." 18 U.S.C. § 951(a). The implementing regulations specify the method of notification, but likewise state that notification must be to the Attorney General. See 28 C.F.R. § 73.3(a) (directing that notification by the agent shall be "addressed to the Attorney General" via the National Security Division of the Department of Justice, and requiring, among other things, the name of the agent or agents, the identities of the

foreign government and officials, a description of the activities, and a certification of the accuracy and truthfulness of the notice).[8]

Consistent with the plain language of the statute, this Court has previously ruled that "compliance with the statute mandates notification to the Attorney General, not to other governmental officials." See Mem. and Order at 27 (ECF No. 120). Accordingly, the Court should preclude the Defendants from arguing or offering evidence that they provided notice to some other government official of their conduct because it is irrelevant and improper. For example, Barrack previously argued in his motion to dismiss that "Mr. Barrack was in phone and text communication with high-ranking members of the Trump campaign and later the Trump Administration regarding his activities in the Middle East, and no doubt those individuals communicated with others about Mr. Barrack's role." See Mem. in Supp. of Barrack's Mot. to Dismiss at 38 (ECF No. 67-1). Such an argument, which at the time was made in support of the Defendants' (inaccurate) claim of prejudice from pre-indictment delay, cannot be raised in support of some other claim about notification to defend against the Section 951 charges in Counts One and Two of the Indictment. The Defendants have not indicated that they will make such an argument and have stated in their proposed jury instructions that they will stipulate that neither defendant provided notice to the Attorney General. Nevertheless, the government respectfully requests a ruling in advance of trial to ensure that the parties are aware of impermissible lines of questioning and proffers of evidence.

---

[8] As noted supra, notification is also deemed to have been made if a registration statement was filed under the Foreign Agent Registration Act. See 28 C.F.R. 73.3(e). Agents "engaged in law enforcement investigations" or "engaged in judicial investigations" may provide notification to the Attorney General through other methods that are not at issue in this case. See id. § 73.3(b) and (c).

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant

the government's motions in limine.

Dated:        Brooklyn, New York
              August 25, 2022

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

                            By:        /s/
                                        Ryan C. Harris
                                        Samuel P. Nitze
                                        Hiral D. Mehta
                                        Craig R. Heeren
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

                                        MATTHEW G. OLSEN
                                        Assistant Attorney General
                                        Department of Justice
                                        National Security Division

                            By:        /s/
                                        Matthew J. McKenzie
                                        Trial Attorney

32