UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.: 1:21-cr-00371-BMC-TAM |
| AL MALIK ALSHAHHI, et al. | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF NON-PARTY ALISON MARCKSTADT'S
MOTION TO QUASH RULE 17(C) SUBPOENA**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND ......................................................................................................3

LEGAL STANDARD ................................................................................................................8

ARGUMENT ...........................................................................................................................10

   I.     The August 2022 Subpoena Requests Fail the *Nixon* Requirements ...........................10

        *A.*     *The Government Fails to Show That Requested Documents Are Relevant and Admissible* ..............................................................................................................14

        *B.*     *The Government's Requests Are Unreasonably Duplicative of Prior Demands* ...15

   II.    The Government's Demand for Post-Indictment Documents from Ms. Marckstadt Improperly Targets Privileged Communications and Work Product ...........................16

CONCLUSION ........................................................................................................................18

APPENDIX ............................................................................................................................ 19

Non-party Alison Marckstadt ("Ms. Marckstadt") respectfully moves pursuant to Federal Rule of Criminal Procedure 17 ("Rule 17"), to quash an August 29, 2022 trial subpoena served on her by the government on August 30, 2022 (the "August 2022 Subpoena").  (Exhibit ("Ex.") A.)  Rather than seek specific, relevant, and admissible documents, the August 2022 Subpoena instead demands production of twelve broad categories of unspecified documents that may or may not exist, making no effort to comply with the requirements of the standard set forth in *United States v. Nixon*, 418 U.S. 683 (1974).  The August 2022 Subpoena also expressly seeks documents created after the time period addressed by the superseding indictment, including during the time period that Ms. Marckstadt was a consultant for the defense team.  Not only do these requests encompass privileged and work product information, but they also ignore the Court's clear admonition (in ruling on Mr. Barrack's subpoena to Digital Bridge) that it would not order production of documents from after the time period alleged in the indictment. Accordingly, the Court should quash the August 2022 Subpoena.

## PRELIMINARY STATEMENT

Ms. Marckstadt has worked with defendant Thomas J. Barrack, Jr. as an executive assistant, project manager, and family office consultant since 2013.  Ms. Marckstadt was also retained as a consultant to Mr. Barrack's legal team from August 2021 until April 2022, where she aided Mr. Barrack and defense counsel with projects relevant to Mr. Barrack's defense. Despite the fact that the government already interviewed Ms. Marckstadt and obtained a substantial number of documents from her and her former employer, on the eve of trial, the government chose to serve her with an extraordinarily broad and burdensome subpoena, which seeks numerous privileged documents she sent and received during her time as a consultant to Mr. Barrack's defense team.  The government's subpoena is inappropriate, both under Rule 17(c)

1

and *Nixon*, and to the extent that it was sent to obtain information about defense strategy in this case or to coerce a further interview of Ms. Marckstadt, it is deeply problematic.

As the government observed in its own recently filed motion regarding a trial subpoena issued to Digital Bridge, the Court must quash subpoenas that fail to meet the relevance, admissibility, and specificity requirements of Rule 17. (ECF 153 at 6, 8.) These same flaws pervade the government's subpoena to Ms. Marckstadt and necessitate this motion to quash. Further, materials created after the indictment, including agreements Ms. Marckstadt may have had with Mr. Barrack or defense counsel, or materials referencing subjects that are at issue in this case, have no relevance to the charges against Mr. Barrack, are sought for potential impeachment, and are not a proper use of a Rule 17 subpoena. Additionally, the government's suggestion that any privilege concerns can be addressed merely by providing a privilege log of all protected documents and communications ignores the massive scope of its requests and what such a log would reveal. Ms. Marckstadt was a privileged consultant for the defense team for nine months, so this effort would necessitate logging potentially hundreds or thousands of documents, and the privilege log itself would likely reveal steps taken by the defense team and its trial strategy to the government (in the same way that a Rule 17 subpoena to a consultant working for the prosecution team would reveal steps taken by the government to prepare for trial).

Where the government has not identified any specific, admissible documents held by Ms. Marckstadt, where the subpoena requests call for documents from the time period that Ms. Marckstadt was a privileged consultant, where the government requests documents dated after the time period alleged in the superseding indictment, and where the government has made repeated efforts (including the threat of subpoenas, or issuing subpoenas and offering to

withdraw them) to coerce her to meet with prosecutors to prepare for trial testimony, the government's trial subpoena for documents from Ms. Marckstadt must be quashed.

## **FACTUAL BACKGROUND**

The government has already obtained extensive discovery from Ms. Marckstadt. On February 27, 2019, the government issued a grand jury subpoena to Ms. Marckstadt for testimony and the production of documents. (Ex. B.) After discussions with counsel for Ms. Marckstadt and her then-employer, Colony Capital ("Colony"), the government held the subpoena in abeyance and instead pursued a voluntary document request dated March 19, 2019 through Colony. (*See* Ex. C.) On May 2, 2019, Ms. Marckstadt produced, through prior counsel, "documents responsive to [the government's] February 27, 2019 request." (Ex. D.) These documents included emails from Ms. Marckstadt's personal email. Then, on June 12, 2019, Colony produced text messages from Ms. Marckstadt and emails from her Colony email account "in response to [the government's] March 19, 2019 request for documents." (Ex. E.) Ultimately, the government received several hundred texts and emails from Ms. Marckstadt's Colony email, personal Gmail account, and personal devices.

When Mr. Barrack was indicted and arrested in July 2021, his counsel retained Ms. Marckstadt as a consultant for the legal defense team, six months before any outreach from the government requesting an interview, and she worked closely with counsel on a number of projects that are protected by privilege.

In January 2022, the government asked Ms. Marckstadt to agree to a voluntary interview. Through counsel, Ms. Marckstadt declined this request. The government then raised the prospect of serving a grand jury subpoena on her if she would not meet with them. In light of this, Ms. Marckstadt agreed to meet with the government for an interview. The government

3

nevertheless issued a grand jury subpoena to Ms. Marckstadt for her testimony, but after further conferring, the government agreed to interview Ms. Marckstadt and adjourned the subpoena.

On April 7, 2022, the government interviewed Ms. Marckstadt in-person in New York for approximately four hours.  During her interview, Ms. Marckstadt answered every question the government posed to her (other than those that called for privileged information), including many questions related to nonprivileged information about her role as a consultant to the defense team.  On May 16, 2022, the government requested a follow-up interview with Ms. Marckstadt. Through counsel, Ms. Marckstadt asked the government to provide the questions in writing, and she offered to respond to those questions in writing.  The government did not respond to this offer.

In May 2022, the government filed a *Curcio* letter with the Court, arguing that Ms. Marckstadt's role as a paid consultant for Mr. Barrack's defense team created a potential conflict of interest.  In accepting Mr. Barrack's waiver of the purported conflict raised by the government, the Court noted that the potential conflict was "pretty esoteric" and "a far unlikely conflict."  (*See* Ex. F at 15.)

On June 14, 2022, the government issued a trial subpoena for testimony to Ms. Marckstadt.  This subpoena did not include any document requests.  On August 2, 2022, the government served on Ms. Marckstadt a new trial subpoena, which reflected the new trial date, included fourteen new document requests (with numerous additional sub-requests), and demanded all responsive documents to be produced on the first day of trial.  (Ex. I.)  The government also asked that Ms. Marckstadt again meet with the government to prepare for potential trial testimony.  (*See* Ex. G.)

Beginning on August 18, 2022, and in accordance with Local Criminal Rule 16.1, Ms. Marckstadt's counsel has conferred by phone and by written correspondence with the government regarding the trial subpoena. (Declaration of Grant B. Gelberg ("Gelberg Decl.") ¶ 2.) During a telephonic conference on August 18, 2022, counsel for Ms. Marckstadt and the government discussed each of the items sought in the pending subpoena. (*Id*.) During that discussion, the government said that if Ms. Marckstadt provided information about the documents in her possession, it would consider narrowing the requests. But that is not how the Rule 17 subpoena process works; it is not incumbent on Ms. Marckstadt to provide the government with information so that it can craft a better subpoena.

On August 23, 2022, counsel for Ms. Marckstadt sent an email to the government outlining the problems with the document requests in the pending subpoena. (Ex. H at 6.) Counsel again invited the government to identify specific documents from Ms. Marckstadt that it believed would be admissible at trial. The government responded the next day, referencing unspecified "possible approaches" it had suggested during the meet and confer to narrow the subpoena. (*Id.* at 4.) The government also documented its intention to force Ms. Marckstadt (and other witnesses who did not immediately agree to meet with the government for trial preparation) to show up for trial and wait indefinitely until the government elected to call them—which could be as long as a month—regardless of the human toll that such a callous approach would have on Ms. Marckstadt:

> We again ask that you advise us what each client's respective position is with regard to our request that they make time to meet with us to prepare for trial.  Assuming there is no change … we will expect your clients to show up for trial as required by law and we will have to have [them] wait until each witness is called before making determinations as to whether we need to call any of the remaining witnesses. … [W]e understand that each of your clients would prefer not to be in this situation. But of course we are just doing our jobs, and you have not given us much to work with them in terms of narrowing the scope of their responsibilities.

(*Id.*)[1]  This unprofessional bullying by the prosecutors has no place, particularly where those witnesses have been cooperative and responsive to the government's requests, including by traveling to New York for pre-trial interviews with the government.[2]

On August 29, 2022, counsel for Ms. Marckstadt responded by email, again pointing out the subpoena's many flaws under Rule 17(c) and *Nixon* and requesting yet again that the government narrow the scope to comply with applicable law.  (*Id.* at 3.)  Recognizing that its initial subpoena was deeply flawed, the government issued a revised subpoena on August 29, 2022 (the "August 2022 Subpoena").  (*Id.* at 1-2; Ex. A.)  However, this new subpoena does not even come close to resolving the problems identified by Ms. Marckstadt.

Certain requests in this subpoena are identical to or seek the same documents as requests that the government propounded to Ms. Marckstadt *three years ago*, duplicating the broad

---

[1] The other "clients" referred to by the prosecutors are Ashley Hall and Jessica Gibbs, both of whom also served as assistants to Mr. Barrack, and both of whom also live on the other side of the country.  Ms. Hall has three small children and is assisting in the care of her own mother, circumstances of which the government was aware when it sent its email.

[2] The government has since clarified that Ms. Marckstadt, Ms. Hall, and Ms. Gibbs do not have to literally wait on a bench at the courthouse for four weeks, but must fly across the country and wait in "any number of locations in Brooklyn, Manhattan, and other parts of the tri-state area" for the four weeks.  (Ex. H at 1.)  This after-the-fact attempt to walk back the prior threat acknowledges the impropriety of the earlier assertion, and regardless is a matter of semantics to the three witnesses who have to leave their homes, family, and work for a month because the government refuses to coordinate schedules with them.  Again, it is inappropriate to use this threat as leverage to get a witness to "voluntarily" interview with the government.

6

requests it has already made and materials it has already received.  The government attempts to justify this by including an instruction stating that Ms. Marckstadt does not have to produce any materials that were previously produced by her in response to the February 27, 2019 grand jury subpoena (*see* Ex. A at Instruction 5), but this turns the obligations under Rule 17(c) on their head.  It is the *government's* responsibility—not Ms. Marckstadt's—to identify what specific documents it wants that were not previously produced.  *See United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 163 (E.D.N.Y. 2005) (finding that it was "unreasonable" to ask a subpoena recipient to "find what documents were previously produced where [the subpoena issuer] could discover this through their own efforts.").

Moreover, the time period for the requests is overbroad, extending from January 1, 2016 to the present.  (*See* Ex. A at Instruction 4.)  Several requests specifically ask for documents from the post-indictment period (*see id.* at Requests 9-12), while other requests only ask for documents dated after the events alleged in the superseding indictment (*see id.* at Request 7).  In other words, nearly all of the requests demand documents dated after the indictment.  But the Court has made clear (in ruling on Mr. Barrack's request for a subpoena to Digital Bridge) that it will not allow requests seeking documents from after the time period alleged in the indictment.

The government, however, ignored the Court's ruling and confirmed in a lengthy email that it was seeking documents that were created after 2018 and, indeed, during the time period after the indictments were returned in this case.  For example, the government confirmed that it is seeking materials from "after the indictment period (April 2018) and after [Ms. Marckstadt] stopped working for Mr. Barrack (2019)."  (Ex. H at 2.)  The government also admitted that it did not know whether the requested documents actually exist, noting that, based on Ms. Marckstadt's prior production of communications from her personal email account, that she

"*may* be in possession of admissible and relevant records in this case." (*Id.* (emphasis added).) The government also asserted that it is entitled to use Rule 17(c) to obtain, without limitation, "records related to any communications with Mr. Barrack about this case," including classic impeachment material to be sued "for purposes of assessing [Ms. Marckstadt's] credibility" and any "bias." (*Id.*)

## LEGAL STANDARD

Rule 17(c) permits parties to issue subpoenas seeking the production of documents. "The purpose of rule 17(c) is not to facilitate discovery, but to enable a party to obtain and inspect evidentiary material prior to trial." *RW Prof'l Leasing Servs.*, 228 F.R.D. at 161 (E.D.N.Y. 2005); *see also Nixon*, 418 U.S. at 698 (noting that a Rule 17(c) subpoena "was not intended to provide a means of discovery for criminal cases"). "Rule 17(c) should not be broadly interpreted as a discovery tool in criminal cases and . . . courts must be careful that Rule 17(c) is not turned into a broad discovery device." *RW Prof'l Leasing Servs.*, 228 F.R.D. at 162 (internal quotations omitted).

As such, a "court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). The validity of a Rule 17(c) subpoena is governed by the strict standard set forth in *Nixon*. Under *Nixon*, the proponent of the subpoena has the burden of establishing: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" 418 U.S. at 699-700.

In short, the August 2022 Subpoena must clear three distinct hurdles: (1) relevancy; (2) admissibility; and (3) specificity. *United States v. Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (citing *Nixon*, 418 U.S. at 700), *overruled on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018). This stringent *Nixon* standard applies to both pre-trial and trial subpoenas for production of documents. *United States v. Percoco*, No. 16-CR-776 (VEC), 2018 WL 9539131, at *2 (S.D.N.Y. June 14, 2018) ("Although the *Nixon* case addressed a pre-trial subpoena, the same standard has been applied to trial subpoenas for documents."); *United States v. Seabrook*, No. 16-CR-467 (ALC), 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) (applying *Nixon* to quash subpoena with return date for the beginning of trial).

The proponent of the subpoena "'has the burden of specifically identifying the materials sought, and showing that they are relevant and admissible.'" *United States v. Barnes*, No. S9 04 CR 186(SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) (quoting *United States v. Brown*, No. 95 CR. 168 (AGS), 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995)); *see also Nixon*, 418 U.S. at 700. The proponent must also "reasonably specify the information contained or believed to be contained in the documents sought" rather than "merely hop[ing] that something useful will turn up." *United States v. Sawinski*, No. 00 CR. 499 RPP., 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000) (citation and internal quotations omitted). The subpoena must "constitute[] a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980). And, as the government further pointed out in its recent filing, the proponent of the subpoena must also show that the requested documents "are not otherwise procurable by the exercise of due diligence." *RW Prof'l Leasing Servs.*, 228 F.R.D. at 164; (*see* ECF 153 at 2-3).

9

"[C]onclusory statements, devoid of support, claiming that the [issuing party] has met the standards set forth in *Nixon*, are inadequate." *United States v. Ashley*, 162 F.R.D. 265, 266 (E.D.N.Y. 1995); *see also United States v. Donziger*, Nos. 19-CR-561 (LAP), 11-CV-691 (LAK), 2021 WL 1865376, at \*4 (S.D.N.Y. May 10, 2021) ("To defeat a motion to quash, the proponent of the subpoena must make a preponderance showing that the materials requested satisfy the standard under Rule 17 . . . .") (citations and internal quotations omitted).  The Court may quash a Rule 17(c) subpoena if the issuing party fails to satisfy any one of the *Nixon* prongs. *See United States v. Bergstein*, No. 16-cr-746 (PKC), 2017 WL 6887596, at \*4 (S.D.N.Y. Dec. 28, 2017).

## ARGUMENT

I.     The August 2022 Subpoena Requests Fail the *Nixon* Requirements

The government's document requests to Ms. Marckstadt in the August 2022 Subpoena must be quashed because all twelve requests fail to meet the *Nixon* requirements.

First, all of the requests fail the requirement to identify *specific* materials from Ms. Marckstadt, instead seeking broad categories of documents that may be in her possession.  *See United States v. Leonard*, 817 F. Supp. 286, 295 (E.D.N.Y. 1992) (quashing Rule 17(c) subpoena that sought "virtually every" document relating to defendant); *United States v. Hutchinson*, No. 97 CR 1146., 1998 WL 1029228, at \*2 (E.D.N.Y. Dec. 23, 1998) ("Courts that have previously addressed such blanket requests have routinely rejected them for a lack of specificity.").  The government confirmed in its August 29, 2022 email that the purpose of the August 2022 Subpoena is to seek, for example, "any communications with Mr. Barrack about this case."  (Ex. H at 2.)  Such broad, amorphous requests are invalid when made in a Rule 17(c) trial subpoena. *See United States v. Lopez*, No. 15-CR-252 (S-3) (PKC), 2022 WL 1137095, at \*2 (E.D.N.Y. Apr. 16, 2022) (finding subpoena inappropriate where proponents "have not identified a single

document or communication that they reasonably believe contains the purportedly relevant or material information, nor, indeed, any other evidence suggesting the existence of such materials.").  None of the government's requests identify a particular document or set of documents believed to be in Ms. Marckstadt's possession, custody, or control that the government does not already have in its possession.

Instead, every request asks for broad categories of documents related to various topics. The requests are summarized below and are set out in full in the attached Appendix, along with a brief explanation of why each request does not meet the *Nixon* standard.

Request 1 seeks documents responsive to the grand jury subpoena that the government served on Ms. Marckstadt on February 27, 2019.[3]  When considered in conjunction with Instruction 5, this request seeks all responsive documents that have not yet been produced, although the government does not identify what specific documents that may be, nor has it articulated any basis to believe such documents exist.

Requests 2 seeks documents related to "any" Form SF-86 or background check for Mr. Barrack, and Request 3 seeks documents related to the inauguration and Presidential Inaugural Committee of Donald Trump.

Request 4 asks for documents "related to 'special projects'" that Mr. Barrack assigned Ms. Marckstadt "relating in any way" to the governments of the UAE, Saudi Arabia, or the United States from April 1, 2016 to April 31, 2018.  The term "special projects" is not defined.

---

[3] The documents requested by the February 27, 2019 subpoena were: "[A]ll documents and records in your possession, custody or control . . . relating to: (i) the 2016 United States Presidential Campaign; (ii) the 58th Presidential Inaugural Committee; (iii) communications with any United States federal agency or federal official; (iv) official and unofficial representatives of the United Arab Emirates, the Kingdom of Saudi Arabia or the State of Qatar; and (v) businesses, sovereign wealth funds and individuals associated with the United Arab Emirates, the Kingdom of Saudi Arabia or the State of Qatar."  (Ex. B.)

Request 5 asks for documents related to media appearances by Mr. Barrack "relating in any way" to the governments of the UAE, Saudi Arabia, or the United States.

Request 6 asks for documents related to Mr. Barrack's relationship with the governments of the UAE, Saudi Arabia, or the United States in any Google account in Ms. Marckstadt's possession, custody, or control.

Request 7 seeks documents "reflecting any communications" between Ms. Marckstadt and the defendants from February 27, 2019 to the present relating to to five incredibly broad categories: the 2016 presidential campaign; the 58th Presidential Inaugural Committee; communications with *any* United States government official; representatives of the UAE, Saudi Arabia, or Qatar; and businesses and sovereign wealth funds from the UAE, Saudi Arabia; or Qatar.[4]

Request 8 seeks documents "reflecting any communications" about the use of encrypted communications systems to discuss "any of the individuals, entities or topics" described in the August 2022 Subpoena.

Requests 9-12 seek documents reflecting "any" employment or payment of Ms. Marckstadt by the defendants, Digital Bridge, or the various law firms involved in the defense of this case. The government is well aware that Ms. Marckstadt continues to work for Mr. Barrack on matters unrelated to this case, which makes the lack of specifics in these requests even more troubling.

The overly broad language used by the government in its requests reveals that it has no idea whether such documents exist. The government confirmed as much in the August 29, 2022

---

[4] Other than the date range, this request tracks almost exactly the document request in the subpoena served to Ms. Marckstadt on February 27, 2019, which is the subject of Request 1.

email, arguing that Ms. Marckstadt "*may* be in possession of admissible and relevant records in this case." (Ex. H at 2 (emphasis added).) This is plainly insufficient. Rule 17(c) requires that the proponent of the subpoena must specifically identify admissible documents; it cannot use the subpoena in the *hopes* of uncovering something relevant. *See Cuthbertson*, 630 F.2d at 144. Here, the government made no effort to identify specific documents for production. By way of just one example, Request 8 asks for communications about the use of encrypted communication systems, but it does not specify which encrypted communication systems. Emails, text messages, and any other electronic messages are encrypted in some way. Thus, any communication about sending an email or texting someone is swept into this overbroad request.

Compounding the overbreadth of these requests is the time period for the document requests, which spans over six years from 2016 to the present. This overly broad time frame is at odds with Rule 17(c)'s specificity requirement, as the government acknowledged in its recent filing, and as the Court recently concluded in its August 29, 2022 hearing regarding Rule 17(c) requests made to another non-party. *See United States v. Maxwell*, No. 20-CR-330 (AJN), 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021) (holding that document requests included in Rule 17(c) subpoena failed the specificity prong where the "timeframe [was] still overly broad"); (*see also* ECF 153 at 8 ("It is also notable that this request extends to the present, and thus years and years beyond the conduct alleged in the Superseding Indictment, further diluting any possibly relevancy.")).

As the government argued to the Court in its own motion to quash, requests that "smack[] of a fishing expedition" are inappropriate under Rule 17(c), particularly "on the eve of trial in a case that has been pending for more than a year" and if the request "would likely result in the production of voluminous and irrelevant documents requiring significant time to review." (ECF

153 at 6); *see also United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) ("Subpoenas seeking 'any and all' materials, without mention of specific admissible evidence, justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*.") (internal quotations omitted); *Donziger*, 2021 WL 1865376, at *6 (quashing subpoena requests that are "a paradigmatic example of the type of 'fishing expedition' proscribed by *Nixon*").

    A.    *The Government Fails to Show That Requested Documents Are Relevant and Admissible*

In addition to the lack of specificity, the requests are also improper because they seek materials that are not relevant to the charges and that are plainly inadmissible at trial.  Under Rule 17, "[t]he items sought cannot merely be potentially relevant or admissible.  Rather, they must be shown to [be] relevant and admissible at the time the subpoena is sought."  *Barnes*, 2008 WL 9359654, at *3.

Many of the government's requests appear targeted not at affirmative evidence, but at potential impeachment material, under the theory that Ms. Marckstadt's employment with defense counsel or Mr. Barrack is a source of potential bias. [5]  The government was not shy about this aspect of the August 2022 Subpoena in its August 29, 2022 email:  "documents and records related to [Ms. Marckstadt's] employment by the defendant's counsel for work on this case . . . [are] directly relevant (and admissible) for purposes of assessing her credibility and establishing for the jury any bias she may have."  (Ex. H at 2.)  This is improper and not true. "[D]ocuments are not evidentiary for Rule 17(c) purposes if their use is limited to impeachment."  *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995); *see also United*

---

[5] Ms. Marckstadt has never worked for Mr. Grimes or Mr. Al-Malik or their lawyers.

*States v. Munteanu*, No. CR 12–0698(SJF), 2013 WL 6194343, at \*2 (E.D.N.Y. Nov. 26, 2013) ("Nor may Rule 17(c) be used prior to trial to uncover evidence for impeachment purposes."); *United States v. Binday*, 908 F. Supp. 2d 485, 492 (S.D.N.Y. Dec. 10, 2012) (noting that a subpoena does not satisfy the *Nixon* test "if it seeks material that could be used at trial only to impeach a witness"); *United States v. Nektalov*, No. S203CR.828(PKL), 2004 WL 1574721, at \*2 (S.D.N.Y. July 14, 2004) ("[D]ocuments sought solely for impeachment purposes are not the proper subject of a Rule 17(c) subpoena.").

Other requests seek categories of documents unrelated to the superseding indictment's allegation that Mr. Barrack and Mr. Grimes were undisclosed agents of the UAE. Requests 4, 5, and 7, for example ask for documents related to Saudi Arabia, and Request 7 also asks for documents related to Qatar. The government has not explained, nor can it, how these materials are relevant to its case-in-chief.

> B.     *The Government's Requests Are Unreasonably Duplicative of Prior Demands*

The August 2022 Subpoena is even more problematic because the government has already received documents from Ms. Marckstadt and Colony related to many of the categories it demands on this subpoena. Request 1 explicitly asks for the previously requested documents, while Requests 3, 4, 5 ask for, among other items, documents related to Donald Trump's inauguration or Presidential Inaugural Committee, "special projects" related to the UAE, United States, or Saudi governments, and Mr. Barrack's media appearances, all of which are topics covered by the previous requests. (*See* Ex. B, Ex. C (Requests 1, 8).) And Ms. Marckstadt and Colony did produce responsive documents to the government at that time. (*See* Ex. D, Ex. E.) The government appears to have made no good faith attempt to determine that which it lacks from the voluminous productions it has already received from other Ms. Marckstadt or Colony as

is required by Rule 17(c).  *See RW Prof'l Leasing Servs.*, 228 F.R.D. at 163 (concluding that it is

"unreasonable" to ask a subpoena recipient to "find what documents were previously produced

where [the subpoena issuer] could discover this through their own efforts").  The government

attempts to cover for this by including Instruction 5, which informs Ms. Marckstadt that she does

not need to re-produce documents.  That is not sufficient.  It is the *government's burden*, not Ms.

Marckstadt's, to sort through the previously produced documents to figure out what, if anything,

is missing.  *Id.*  Moreover, the government has not provided anything that suggests anything is,

in fact, missing from those previous productions.  Thus, these requests should be quashed.

II.    The Government's Demand for Post-Indictment Documents from Ms. Marckstadt
       Improperly Targets Privileged Communications and Work Product

In addition to failing to meet the standards set out in *Nixon*, a number of the requests raise

serious concerns about the apparent effort of the government to obtain privileged materials,

including the materials bearing on the defense team's strategy *in this criminal case*.  *See United

States v. Harry*, No. 86 CR 766, 1987 WL 30695, at *1 (E.D.N.Y. Dec. 23, 1987) ("Trial

subpoenas by definition must be connected to good faith efforts to obtain admissible evidence.").

Nearly all of the requests in the August 2022 Subpoena call for documents up to the present.

Thus, by design, these requests encompass the year following indictment in this case, including

the nine months during which Ms. Marckstadt was retained by defense counsel as a consultant.

The government is well aware that Ms. Marckstadt was a privileged consultant and assisted with

the preparation of Mr. Barrack's defense, as they questioned her about this role during her

interview, and her role was the subject of a *Curcio* hearing before the Court.

Yet, in addition to covering the post-indictment timeframe, several requests specifically

seek documents related to Ms. Marckstadt's role as a privileged consultant.  Requests 9 through

12 call for agreements between Ms. Marckstadt and any of the defendants and defense counsel

16

and records showing any payments by them or Digital Bridge to Ms. Marckstadt during the post-indictment period.

By their terms, these requests seek documents from a consultant working for the defense team, for the time period that she was working with counsel on the defense of the case. This is plainly improper on its own, but the broad language of the requests compounds the problem by necessarily sweeping in documents and communications involving litigation preparation and strategy. Rule 17(c) does not permit the government, on the eve of trial, to seek privileged items regarding preparation of the defense case from a person they know to be a privileged consultant for the defendant and his counsel. The Court should reject this effort by the government to use its subpoena power to invade the defense camp.

In the August 2022 Subpoena and during its meet and confers with counsel, the government has stated that Ms. Marckstadt should log any document or communications that are potentially privileged. (*See* Ex. A at Instruction 6 ("You must individually identify each privileged document by describing its subject matter, the date it was created, the author of the document by first and last name, all recipients of the document by first and last name, the specific privilege from disclosure that You are asserting with respect to each document, and the factual basis for Your assertion of the privilege as to each document.").) But the review and logging of privileged documents from someone who worked as a consultant for the defense team for nine months will be onerous and time-consuming, particularly for an individual non-party witness. The tremendous burden to Ms. Marckstadt will be exacerbated by her role as a consultant to Mr. Barrack's defense team, as she does have numerous privileged communications. This burden is beyond inappropriate because these communications have no

17

relevance to the central issues in the government's case-in-chief and importantly, are also not admissible.

For these reasons, the Court should quash the government's request for any post-indictment documents.

## **<u>CONCLUSION</u>**

For the reasons described in detail above, the Court should quash the document requests in the August 2022 Subpoena.

Dated: September 1, 2022                    Respectfully submitted,

CHIESA SHAHINIAN & GIANTOMASI

_____/s/ Emil Bove_____
Emil Bove
CHIESA SHAHINIAN & GIANTOMASI
11 Times Square
New York, New York  10036
Telephone:  (212) 973-0572
Email:  ebove@csglaw.com

HALPERN MAY YBARRA GELBERG LLP

_____/s/ Grant B. Gelberg_____
Grant B. Gelberg (CA State Bar No. 229454)
HALPERN MAY YBARRA GELBERG LLP
550 South Hope Street, Suite 2330
Los Angeles, California  90071
Telephone:  (213) 402-1900
Facsimile:  (213) 402-1901
Email:  grant.gelberg@halpernmay.com

*Attorneys for Non-Party Alison Marckstadt*

## APPENDIX IN SUPPORT OF NON-PARTY ALISON MARCKSTADT'S MOTION TO QUASH RULE 17(C) SUBPOENA

Non-party Alison Marckstadt ("Ms. Marckstadt") hereby submits this Appendix showing the government's document requests in the August 2022 Subpoena, along with the objections to the requests as follows:

| No. | Request | Objections |
|-----|---------|------------|
| 1. | Documents responsive to the subpoena served on You, through counsel Mathew Herrington, on or about February 27, 2019. | This request is overbroad and does not identify any specific documents.  Further, the time period for this request (January 1, 2016 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request also asks for documents related to Saudi Arabia and Qatar. The request also calls for communications related to *any* communications with the United States government, regardless of whether those communications have any relevance to the charges in this case.  The request further calls for the production of privileged materials, which will not be admissible at trial.<br><br>The government has also already requested and received documents responsive to this request. |
| 2. | Documents related to any Form SF-86 application, or background check, related to Thomas J. Barrack's appointment as a United States Special Envoy or United States Ambassador. | This request is overbroad and does not identify any specific documents.  Further, the time period for this request (January 1, 2016 to the present) is overbroad |

| No. | Request | Objections |
|---|---|---|
| | | and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>The request further calls for the production of privileged materials, which will not be admissible at trial. |
| 3. | Documents related to the Presidential Inauguration of President-elect Donald J. Trump and the Presidential Inaugural Committee. | This request is overbroad and does not identify any specific documents.  Further, the time period for this request (January 1, 2016 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>The request further calls for the production of privileged materials, which will not be admissible at trial.<br><br>The government has also already requested and received documents responsive to this request. |
| 4. | Documents related to "special projects" that You were assigned to work on by Thomas J. Barrack relating in any way to the UAE Government, KSA Government, or United States government, between April 1, 2016 and April 31, 2018. | This request is overbroad and does not identify any specific documents.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request also asks for documents/communications related to Saudi Arabia.  The request also calls for the production of privileged materials, which will not be admissible at trial.<br><br>The government has also already requested and received |

| No. | Request | Objections |
|-----|---------|------------|
| | | documents responsive to this request. |
| 5. | Documents related to media appearances by Thomas Barrack, relating in any way to the UAE Government, KSA Government, or United States government, between April 1, 2016 and April 31, 2018. | This request is overbroad and does not identify any specific documents.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request also asks for documents/communications related to Saudi Arabia.  The request also calls for the production of privileged materials, which will not be admissible at trial.<br><br>The government has also already requested and received documents responsive to this request. |
| 6. | Documents related to Thomas J. Barrack's relationship to the UAE Government, KSA Government, or United States government, which are located in any Google account that is in your possession, custody or control. | This request is overbroad and does not identify any specific documents.  Further, the time period for this request (January 1, 2016 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request also asks for documents related to Saudi Arabia.  The request further calls for the production of privileged materials, which will not be admissible at trial. |
| 7. | Documents reflecting any communications between or among You, Barrack, Grimes, and/or Al-Malik from February 27, 2019 through the present, relating to (i) the 2016 United States Presidential | This request is overbroad and does not identify any specific documents.  Further, the time period for this request (February |

| No. | Request | Objections |
|---|---|---|
| | Campaign; (ii) the 58th Presidential Inaugural Committee; (iii) communications with any United States federal agency or federal official; (iv) official and unofficial representatives of the United Arab Emirates, the Kingdom of Saudi Arabia or the State of Qatar; and (v) businesses, sovereign wealth funds and individuals associated with the United Arab Emirates, the Kingdom of Saudi Arabia or the State of Qatar. | 27, 2019 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request also asks for documents related to Saudi Arabia and Qatar. The request also calls for communications related to *any* communications with the United States government, regardless of whether those communications have any relevance to the charges in this case. The request further calls for the production of privileged materials, which will not be admissible at trial. |
| 8. | Documents reflecting any communications about the use of encrypted communication systems for the purpose of communicating about any of the individuals, entities or topics described in this Rider. | This request is overbroad and does not identify any specific documents. The request also does not specify the encrypted communication systems at issue.<br><br>The time period for this request (January 1, 2016 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request has nothing to do with the UAE or the charged conduct. The request also calls for the production of privileged materials, which will not be admissible at trial. |

| No. | Request | Objections |
|-----|---------|-----------|
| 9. | Documents reflecting any contemplated, proposed or actual employment of You by Thomas J. Barrack, Matthew Grimes, and/or Rashid al-Malik since July 16, 2021. | This request is overbroad and does not identify any specific documents.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request has nothing to do with the UAE or the charged conduct. The request further calls for the production of privileged materials, which will not be admissible at trial.  This request explicitly seeks documents dated after the Defendants were indicted, and those documents are irrelevant and inadmissible. |
| 10. | Documentation of any employment agreement between You and Paul Hastings, OMM, Willkie, W&S, BSF and/or any other law firm (collectively the "Law Firms"). | The time period for this request (January 1, 2016 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request has nothing to do with the UAE or the charged conduct. The request further calls for the production of privileged materials, which will not be admissible at trial. |
| 11. | Documentation of any agreement with any other individual or entity and Paul Hastings, OMM, Willikie [sic], W&S, and/or BSF related to Your employment. | The time period for this request (January 1, 2016 to the present) is overbroad and impermissible, as it includes documents dated after the period alleged in the indictment.<br><br>This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment |

| No. | Request | Objections |
|---|---|---|
|  |  | concerns the UAE, but this request has nothing to do with the UAE or the charged conduct. The request further calls for the production of privileged materials, which will not be admissible at trial. |
| 12. | Bank records indicating the source and amount of any payments received by You for any employment of You by Barrack, Digital Bridge, any of the Law Firms or any of their agents or intermediaries since July 16, 2021. | This request seeks irrelevant and inadmissible documents. The conduct alleged in the Indictment concerns the UAE, but this request has nothing to do with the UAE or the charged conduct. This request explicitly seeks documents dated after the Defendants were indicted, and those documents are irrelevant and inadmissible. |