# EXHIBIT H

| | |
|---|---|
| **Subject:** | RE: [EXTERNAL] RE: US v. Barrack et al.; Trial Subpoenas |
| **Date:** | Monday, August 29, 2022 at 5:53:09 PM Pacific Daylight Time |
| **From:** | Heeren, Craig (USANYE) |
| **To:** | Grant Gelberg, Catherine Thompson |
| **CC:** | Harris, Ryan (USANYE) 1, Nitze, Samuel (USANYE), Mehta, Hiral (USANYE) |
| **Attachments:** | 2022.08.29.Marckstadt.Subpoena.pdf |

Grant:

Thank you for your response. We address each of the items you raise in turn.

Scheduling for Ms. Hall and Ms. Gibbs, and Position of Other Clients
September 8 and September 9 work for us for Ms. Hall and Ms. Gibbs. We appreciate their flexibility on timing. We will propose 2PM EST. Please confirm that time, or let us know if they prefer a different time. We will send you a calendar invite.

We note that your email does not discuss the availability of either Ms. Marckstadt or Mr. Daddi. We ask you again, specifically, to answer the question of whether they are declining to meet with us or not. If you have been instructed by these two clients not to answer our question, please tell us why.

Availability of Trial Witnesses
We want to first correct a serious misstatement in your email. We have never stated that your clients must "appear in person on the first day of trial and sit on a bench in the courthouse until you decide to call them." You say "you and your colleagues are better than this," and we agree. We are better than that, because we never said that. This is an obvious straw man, and deeply unhelpful to reaching a resolution that might allow us to accommodate particular clients. If you had worked in good faith with us in June, when we expressed a need for more information, or at the beginning of August when we issued you the subpoenas and asked to discuss the parameters, or even when you finally called us back several weeks ago, then we would be better positioned to give you our sense of whether (and to what degree) we need each of your clients to be available to testify, or whether we could do without one or more of them. Indeed, you have even waited 6 days to respond to the phone calls and emails we sent minutes after you emailed us to raise your concerns. We are trying to resolve this, and you seem disinclined to do so. We hope that changes, because we do want to accommodate your clients as best we can.

In any event, we are going to reiterate our position to avoid further confusion: To the extent we cannot reach any accommodation, we ask that your clients "show up" for trial, meaning available to testify during our case-in-chief, which we expect to last for approximately 4 weeks beginning on 9/19. We are not asking anyone to wait on a bench in the courthouse. There are any number of locations in Brooklyn, Manhattan, and other parts of the tri-state area where your clients can wait, provided they are available to be called as a witness when needed. Your clients may even be able to stay at home, provided they are willing to book next-day travel. And, of course, if your clients are willing to meet with us, we can have a better idea of their timing, role, and whether we need them to testify at all. Our office also offers assistance with scheduling, booking and paying for travel. If any of your clients that we subpoenaed would like this service, please notify us and we can coordinate accordingly.

Subpoena Request
We continue to disagree about your position about the scope of our subpoena. Nonetheless, we have attached hereto a revised subpoena and rider to Ms. Marckstadt. Please confirm acceptance of service (or if you refuse), whether your client intends to comply with its terms, you propose any further modification, or

you still intend to move to quash.

We think the reason for this information is self-evident and, if it is not, was all discussed at an interview that you participated in. We also explained this to you on our phone call several weeks ago. Nonetheless, we identify them again below:

- As you know, at her interview, Ms. Marckstadt explained that she was an employee of defendant Thomas Barrack during the period of the criminal conspiracy, worked closely with him, including on "special projects" identified by Barrack as particularly important. Your client played a substantial role in the planning and execution of the Presidential Inauguration of President Trump, including an event (the Chairman's Global Dinner) that is specifically mentioned in the Indictment. Ms. Marckstadt also helped Barrack prepare his response to the SF-86 application for a potential Ambassadorial position, and has detailed knowledge about that process. Ms. Marckstadt worked on various media appearances, another issue central to this matter. Ms. Marckstadt (as well as Mr. Barrack's two other executive assistants that you represent) also stated that she worked on items for Mr. Barrack using personal accounts, such as her personal Google account. Indeed, some of Ms. Marckstadt's Gmail emails were provided to us voluntarily by her prior counsel. Thus, we have not just a good faith belief, but concrete evidence that your client may be in possession of admissible and relevant records in this case.
- As you know, at her interview, your client indicated that, after the indictment period (April 2018) and after she stopped working for Mr. Barrack (2019), she continued to maintain contact with Barrack. She indicated that she has communicated with Mr. Barrack by telephone, by email and by encrypted chat platforms. She also indicated that at least some of those discussions were related to the facts of this criminal case. Thus, we have a valid, good faith belief to seek records related to any communications with Mr. Barrack about this case (apart from those withheld under a valid claim of privilege as indicated in a privilege log).
- As you know, Ms. Marckstadt also stated that, notwithstanding her position as a fact witness, she was hired by Mr. Barrack's defense counsel to be a "consultant" with her work focused exclusively on Mr. Barrack's case. She admitted to being paid $15,000 a month for this. She also indicated she signed documents to formalize this relationship. Thus, we have a good faith belief (and, again, specific evidence) that she has documents and records related to her employment by the defendant's counsel for work on this case, which is directly relevant (and admissible) for purposes of assessing her credibility and establishing for the jury any bias she may have.
- Our rider excludes any materials already produced. But I pause to note that your claim to have just learned about your client's prior production is surprising. We previously told you that her prior counsel (coincidentally, the same person who also hired your client as a litigation consultant) produced materials to us in February 2019, purportedly a voluntary production, and we specifically explained that we were submitting this subpoena in part to ensure that such a voluntary production was complete. We spoke to you about this in April 2022, when we asked Ms. Marckstadt about her ongoing relationship and retention of records/communications relevant to this case that I discuss in the prior bullets. In any event, as her current counsel, we expected you to know that Ms. Marckstadt had previously provided materials in this matter, or that, more than four months since we first asked about such materials, that you would have asked Ms. Marckstadt about what (if anything) she had previously produced to the government.

Regards,
Craig

---

**From:** Grant Gelberg <grant.gelberg@halpernmay.com>
**Sent:** Monday, August 29, 2022 1:22 AM
**To:** Heeren, Craig (USANYE) <CHeeren@usa.doj.gov>; Catherine Thompson

<catherine.thompson@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <RHarris1@usa.doj.gov>; Nitze, Samuel (USANYE) <SNitze@usa.doj.gov>; Mehta, Hiral (USANYE) <HMehta@usa.doj.gov>
**Subject:** Re: [EXTERNAL] RE: US v. Barrack et al.; Trial Subpoenas

Craig,

As you know, I am traveling internationally but I wanted to take the time to respond to your email regarding Ashley Hall, Jessica Gibbs, and Alison Marckstadt. As an initial matter, we were disappointed to see that you are willing to disrupt their lives and the lives of their families by forcing them to appear in person on the first day of trial and sit on a bench in the courthouse until you decide to call them.  This is improper and unnecessary, and we hope that you will not resort to such tactics for three witnesses who have already traveled to New York and spent several hours meeting with you voluntarily.  You and your colleagues are better than this.

Ms. Gibbs and Ms. Hall are willing to meet with you remotely for trial preparation. They are available on September 8 or 9 and are flexible on times.  We ask that you limit the time for this meeting to no more than two hours each. At the conclusion of these sessions, we can discuss whether any further meetings are necessary.

With regards to Ms. Marckstadt, as we have explained in written and telephonic communication now, you issued a subpoena to her that doesn't meet the standard that you've articulated trial subpoenas should be measured by. The *Nixon* standard is clear that any Rule 17(c) subpoenas should request specific, identifiable, and admissible documents. Your subpoena goes far afield of that standard and includes document requests that look like civil discovery, rather than anything close to what *Nixon* requires. Your solution has not been to identify specific documents or explain how the requested documents were relevant and admissible. If that were the case, that would be a meaningful narrowing that we could assess and respond to. Instead, your proposal appears to be that Ms. Marckstadt provide you with information about what materials she has, and based on the information that she provides, you would then provide a narrower set of requests that might meet the *Nixon* standard. However, that's not how the process works. Ms. Marckstadt shouldn't have to collect and review potentially voluminous documents – and then answer your questions about these documents – to avoid responding to what we all agree is an overly broad subpoena.

Moreover, in our August 18 teleconference, you did not tell me that Ms. Marckstadt's prior counsel and Colony have already produced numerous documents, emails, and text messages from Ms. Marckstadt in 2019.  These productions appear to have been in response to requests that are virtually identical to those made in the current trial subpoena.  As the proponent of the subpoena, it's the government's responsibility to review those prior productions and identify any specific additional documents for production at trial.  *See United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 163 (E.D.N.Y. 2005) (finding that it was "unreasonable" to ask a subpoena recipient to "find what documents were previously produced where [the subpoena issuer] could discover this through their own efforts.")  Based on our conversations, it does not appear that the government has met this obligation.

I reiterate my request that you identify specific documents that you know are in Ms. Marckstadt's custody or control that are relevant and admissible at trial. If we do not receive that information, we are prepared to file a motion to quash.  Given my current travels in a different time zone, please respond to this email in writing. It is my hope we can resolve our differences and avoid motion practice.

Best,
Grant

**From:** Heeren, Craig (USANYE) <Craig.Heeren@usdoj.gov>
**Date:** Wednesday, August 24, 2022 at 5:35 PM
**To:** Catherine Thompson <catherine.thompson@halpernmay.com>, Grant Gelberg <grant.gelberg@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <Ryan.Harris2@usdoj.gov>, Nitze, Samuel (USANYE) <Samuel.Nitze@usdoj.gov>, Mehta, Hiral (USANYE) <Hiral.Mehta@usdoj.gov>
**Subject:** RE: [EXTERNAL] RE: US v. Barrack et al.; Trial Subpoenas

Grant (and Catherine):

First, with regard to witnesses: We subpoenaed your clients in June and repeatedly informed you about our view that they have relevant information and would need to be available to testify, including on a call last week. You told us you would speak to them and advise us whether they would be willing to prepare with us. Instead, on August 23, you appear unwilling to provide this basic information and ask us to again explain what topics and documents we would use before you do anything more. You already have that information. Sitting, as you do, apart from the respective trial teams, you may not be able to understand the full scope or significance of your clients' testimony in this case. Many civilian witnesses at many criminal trials in many federal courthouses have little understanding as to how their particular testimony fits into a larger case. It is not necessary to educate you or your client on how their testimony fits into the government's larger theory and, in fact, it would be irresponsible to do so, as it would expose your clients to facts beyond the ken of their own personal observations and knowledge. It is the simple fact that we believe your clients have testimony relevant to this criminal proceeding and they have been subpoenaed to testify at the trial. The scope of their testimony is expected to largely stay within the four corners of the topics covered in their respective interviews.

We are not unsympathetic to Ms. Hall's personal circumstances. As we have repeatedly told you, the most effective way for the government to be able to assess whether it is necessary for all three of your clients to testify at trial will be for them to prepare with us prior to trial. Without any advance preparation, it will be next to impossible for us to determine whether one or more of your clients might be relieved of their obligation to be available for trial. We have asked you to speak to your four clients and advise us of their particular positions about meeting and preparing for trial with us. To date, you have declined to answer that simple question directly. We again ask that you advise us what each client's respective position is with regard to our request that they make time to meet with us to prepare for trial. Assuming there is no change in your current posture, we will expect your clients to show up for trial as required by law and we will have to have to wait until each witness is called before making determinations as to whether we need to call any of the remaining witnesses. We emphasize that we do not take Ms. Hall's circumstances lightly and would prefer to reach some reasonable accommodation. And we understand that each of your clients would prefer not to be in this situation. But of course we are just doing our jobs, and you have not given us much to work with in terms of narrowing the scope of their responsibilities. Respectfully, if your clients, including Ms. Hall, are concerned about interruption to their lives and lack of clarity about whether, when, and on what topics they may be required to testify, they should look to your delays in getting back to us and to their own decisions (assuming they are the ones deciding) to decline to meet with us. We remain willing to work with you on this.

Second, with regard to documents: while we believe our subpoena is appropriate and consistent with the law, as we told you last week, we are willing to negotiate with in good faith to agree upon a narrower request. In fact, during our call last week, we discussed possible approaches to narrow the scope of the subpoena. Your email acts as if that conversation never happened and as if we did not expressly state, as we did, our willingness to work with you and your client on this. Indeed, it appeared you were taking notes on our call as we explained, request by request, how we would narrow the scope of the request and once you provided certain documents, we could have another conversation. We acted in good faith on the call and

tried to be reasonable and transparent.  To date, you have not been willing to provide us any information about what materials your client has, whether a search has even been conducted to date, or even if she would be willing to submit to a narrower request.  If you are unwilling to actually negotiate with us, then please be advised that we expect you to either produce the documents as required, move to quash, or respond to an order to show cause.

Finally, we are troubled by the fact that you sent this email, advised that you would be traveling for 10 days, and then declined to respond to a phone call and email sent immediately after we received your email.  Given that trial is nearly upon us, we once again ask that you work with us quickly to resolve this, including by sending dates and times when you are available to confer over the course of the next five days.

Craig

---

**From:** Catherine Thompson <catherine.thompson@halpernmay.com>
**Sent:** Wednesday, August 24, 2022 1:02 PM
**To:** Mehta, Hiral (USANYE) <HMehta@usa.doj.gov>; Grant Gelberg <grant.gelberg@halpernmay.com>
**Cc:** Harris, Ryan (USANYE) 1 <RHarris1@usa.doj.gov>; Heeren, Craig (USANYE) <CHeeren@usa.doj.gov>; Nitze, Samuel (USANYE) <SNitze@usa.doj.gov>
**Subject:** Re: [EXTERNAL] RE: US v. Barrack et al.; Trial Subpoenas

Hiral,

Grant is traveling internationally today, so he's not available for a call. It would be helpful for us if you could put your heads together and provide some thoughts on Grant's email from yesterday so that we can review and discuss it internally before getting on another call.

Please let me know of any questions.

Thanks,
Catherine

---

Catherine H. Thompson
Halpern May Ybarra Gelberg LLP
550 S. Hope St., Suite 2330
Los Angeles, CA 90071
Main: (213) 402-1900
Direct: (213) 402-1907
Catherine.Thompson@halpernmay.com
www.halpernmay.com

---

**From:** "Mehta, Hiral (USANYE)" <Hiral.Mehta@usdoj.gov>
**Date:** Tuesday, August 23, 2022 at 8:13 PM
**To:** Grant Gelberg <grant.gelberg@halpernmay.com>
**Cc:** "Harris, Ryan (USANYE) 1" <Ryan.Harris2@usdoj.gov>, "Heeren, Craig (USANYE)" <Craig.Heeren@usdoj.gov>, Catherine Thompson <catherine.thompson@halpernmay.com>, "Nitze, Samuel (USANYE)" <Samuel.Nitze@usdoj.gov>
**Subject:** [EXTERNAL] RE: US v. Barrack et al.; Trial Subpoenas

Grant:

We just tried you.  If you or Catherine are available for a call tonight or tomorrow morning, let us know.  My cell is 718-812-1937.  Thank you.

Hiral

---

**From:** Grant Gelberg <grant.gelberg@halpernmay.com>
**Sent:** Tuesday, August 23, 2022 10:49 PM
**To:** Mehta, Hiral (USANYE) <HMehta@usa.doj.gov>
**Cc:** Harris, Ryan (USANYE) 1 <RHarris1@usa.doj.gov>; Heeren, Craig (USANYE) <CHeeren@usa.doj.gov>; Catherine Thompson <catherine.thompson@halpernmay.com>
**Subject:** [EXTERNAL] US v. Barrack et al.; Trial Subpoenas

Hiral,

After our call on Thursday, I had a chance to refresh myself on the allegations in the superseding indictment and the areas covered in the April interviews.  After considering the information available to me, I'm having trouble understanding why you would call Ashley Hall, Jessica Gibbs, or Alison Marckstadt as witnesses at trial.  I recognize that you know your case far better than I do, so it would be helpful to me if you could lay out in more detail the topics you want to cover with them in prep and at trial and the documents you are likely to use with them.  This additional information will help me advise them on what makes sense in terms of next steps.

In addition, I have further information about Ashley Hall to share with you.  Ms. Hall is the primary caregiver to her three young children.  Her mom is her backup caregiver but, unfortunately, she recently had brain surgery to remove a tumor.  So, in addition to caring for her children, Ms. Hall is also helping with her mom's recovery, and her mom is unable to take over Ms. Hall's childcare responsibilities.  Accordingly, blocking out uninterrupted time for a remote prep session, let alone days of travel from California to New York, would create a significant hardship for Ms. Hall.  Under these circumstances and, given her limited role/knowledge, I ask that you withdraw her trial subpoena.

On the Rule 17 subpoena to Ms. Marckstadt, I had a chance to conduct additional research, including reviewing the recent briefing concerning the defense's subpoena to Digital Bridge.  Based on the standard you outline in the motion to quash that subpoena, the document requests included in the subpoena to Ms. Marckstadt are deficient in a number of ways.  On the most basic level, the requests fail to meet the relevancy, admissibility, and/or specificity requirements of *United States v. Nixon*, 418 U.S. 683 (1974) and its progeny.  For example, many of the requests purport to require the production of materials from 2016 to the present – a six-year span that goes well beyond the relevant time period outlined in the indictment.  The subpoena also broadly and repeatedly uses an "all documents" formulation which fails to sufficiently identify the records sought.  And, it's not at all clear how documents related Ms. Marckstadt's work as a consultant to Mr. Barrack's defense team are relevant to the issues at trial or how such documents could be admissible.  All of this is on top of the privilege issues raised by several of your requests, which places the burden on Ms. Marckstadt to review for potential privilege communications that could well be swept in by the broad language used in the subpoena.

This list is not intended to be exhaustive, but rather I cite these concerns to highlight some of the key issues which disproportionately impact a non-party, individual witness such as Ms. Marckstadt.  In light of the above, please let me know how you would propose modifying the subpoena to meet the requirements of Rule 17.  Further, if you have any specific documents from Ms. Marckstadt that you believe are admissible at trial, I ask that you provide a list of those documents.

I'll be traveling over the next 10 days so please copy my colleague Catherine Thompson (cc'd here) on

all emails.

Best,
Grant

_____

**Grant B. Gelberg**
Halpern May Ybarra Gelberg LLP
550 S. Hope St., Suite 2330
Los Angeles, CA 90071
Main: (213) 402-1900
Direct: (213) 402-1940
Mobile: (213) 509-6067
Grant.Gelberg@halpernmay.com
www.halpernmay.com

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

**Page 8 of 7**