```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
   UNITED STATES OF AMERICA,                                :
                                                            :       ORDER
                       - against -                          :
                                                            :       21-cr-371 (BMC)
   AL MALIK ALSHAHHI, et al.,                               :
                                                            :
                                       Defendants.          :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Before me is a motion to quash a Fed. R. Crim. P. 17 subpoena that the Government served on Alison Marckstadt [186], and Thomas Barrack's joinder in that motion [210]. The subpoena seeks twelve types of documents that fall into three categories: first, documents and communications that the Government believes are directly relevant to the charged offenses; second, communications that discuss the use of encrypted messaging platforms; and third, documents that show Marckstadt's bias. For the reasons discussed below, the motion to quash is granted in part and denied in part.

**I.      Legal Framework**

The Supreme Court in United States v. Nixon, 418 U.S. 683 (1974), established four requirements for Rule 17 subpoenas. They are:

> (1) the documents [requested must be] evidentiary and relevant; (2) [the documents requested] are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party [requesting the documents] cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Id. at 699-700.

Nixon does not demand knowledge of specific documents nor the exact content of the material. See United States v. Weisberg, No. 08-cr-347, 2011 WL 1327689, at *7 (E.D.N.Y. April 5, 2011). Rather, the Government just needs to proffer facts sufficient to show why it believes the requested material is central to its case, admissible, and existent. See id.

II. **Privileged Material**

The Government can request documents or material created after the events alleged in the indictment if it is likely admissible and would show that the events alleged in the indictment occurred. Here, this type of evidence has the potential to be highly probative of defendants' intentions.

For documents that raise privilege concerns, Marckstadt should produce a privilege log. This procedure is standard practice and does not risk disclosing defendants' trial strategy or attorney-client work product to the Government. See generally United States v. Ray, No. 10-cr-110, 2022 WL 374367, at *11 (S.D.N.Y Feb. 8, 2022). If Marckstadt's privilege log is too vague or broad, the Government can challenge it, and the Court will evaluate the privilege log after conducting an *in camera* review of the withheld documents. This ruling also resolves the primary issue raised by Barrack's joinder motion, which maintained that compliance with the Government's subpoena threatened to invade Barrack's relationship with counsel.

III. **Requests 1 through 7: Relevant Documents and Communications**

The Court limits Request 1 from the Government's subpoena to only require that Marckstadt produce documents and communications concerning official and unofficial representatives of the United Arab Emirates ("UAE"), or the Kingdom of Saudi Arabia ("KSA"), and business, sovereign wealth funds, and individuals associated with the UAE and KSA. Similarly, Request 7 is limited to requiring that Marckstadt produce documents reflecting any communications between or among her, Barrack, Grimes, and/or Al-Malik from February 27,

2019, through the present relating to official and unofficial representatives of the UAE or KSA, and business, sovereign wealth funds, and individuals associated with the UAE or KSA.

These requests are appropriate because defendants are alleged to have been acting as unregistered agents of the UAE. Additionally, the Government alleges that as part of their effort to act on behalf of the UAE, defendants supported KSA foreign policy and gave KSA officials special access to high-level U.S. policymakers. Similarly, the Government alleges that defendants worked with UAE officials to influence Trump Administration policy after the UAE and KSA severed diplomatic ties with Qatar. The requested material would likely be admissible as statements of a party opponent, business records, or to show defendants' state of mind.

The Government also has proffered that Marckstadt previously produced similar documents and that it has no other way of obtaining such critical material. I agree that the Government can seek these types of documents because they are likely admissible and within Marckstadt's control. See Nixon, 418 U.S. at 699-700; United States v. Skelos, No. 15-cr-317, 2018 WL 2254538, at *7 (S.D.N.Y. May 17, 2018).

The remaining components of Requests 1 and 7 seek "any and all documents" relating to "(i) the [2015/2016] United States Presidential Campaign; (ii) the 58th Presidential Inaugural Committee; (iii) communications with any federal agency or federal official;" (iv) official and unofficial representatives of Qatar; and (v) business, sovereign wealth funds, and individuals associated with Qatar. These requests are based on the Government's February 19, 2019 grand jury subpoena. But in the context of a Rule 17 subpoena, they are overbroad.

A Rule 17 subpoena cannot request that Marckstadt "update" her response to the Government's 2019 Grand Jury Subpoena or provide communications related to those same broad topics. Rule 17 subpoenas are much narrower instruments than grand jury subpoenas.

The Government cannot use Rule 17 to conduct general discovery. See United States v. Henry, 482 F.3d 27, 30 (1st Cir. 2007) (citing Nixon v. United States, 418 U.S. 683 (1974); Bowman Dairy Co. v. United States, 341 U.S. 214, 218 (1951)); United States v. Ferguson, No. 06-cr-137, 2007 WL 2815068, at *2-3 (D. Conn. Sept. 26, 2007); United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995). If the Government knows that Marckstadt previously produced similar and relevant documents, it must describe a particular type or category of material that is likely to contain more of this relevant and admissible evidence.

Defendants allegedly were deeply involved in President Trump's campaign and inauguration. They also likely had repeated communications with multiple U.S. federal agencies and officials. Most of the documents generated as part of these activities likely did not involve the illegal actions alleged in the indictment. Relatedly, the indictment does not allege that defendants acted as agents of Qatar or assisted officials tied to that state at the behest of the UAE.

Request 2 asks for "documents related to any Form SF-86 application, or background check, related to Thomas J. Barrack's appointment as a United States Special Envoy or United States Ambassador." This material could show that Mr. Barrack knowingly made false statements on official US Government documents about his allegedly deep ties to the UAE or other officials in the region. It goes to the heart of the Government's case and the Government, again, knows such evidence exists because Marckstadt has previously produced similar documents. Thus, this request meets Nixon's requirements.

As for Request 3, the Government has failed to show that all documents related to the Presidential Inauguration of President-elect Donald J. Trump and the Presidential Inaugural Committee are relevant to this case. Because Barrack was the former Chairman of the

4

President's Inaugural Committee, there are likely thousands upon thousands of pages of documents concerning the 2016 inauguration that have no relationship to this case. Many of those documents, both relevant and not, are likely under the control of Marckstadt. Request 3 is accordingly narrowed to documents related to the Presidential Inauguration of President-elect Donald J. Trump and the Presidential Inaugural Committee that concern Rashid al-Malik, UAE officials, the UAE, KSA officials, or the KSA.

Requests 4 and 5 are limited to "special projects" that Barrack assigned Marckstadt and "media appearances" relating to the UAE, KSA and U.S. foreign policy regarding the UAE and KSA. The Government's request for all material regarding the United States government is too broad and would yield documents with irrelevant information. Because such documents would be excluded under Fed. R. Evid. 401 or 403, Requests 4 and 5 would fail Nixon's first requirement without this tailoring.

Similarly, Request 6 is narrowed to only documents related to Barrack's relationship with the UAE government and KSA government located in any Google account that is in Marckstadt's possession, custody, or control. Documents concerning Barrack's relationship to the U.S. Government may be relevant to this case. But the vast majority of Barrack's contacts with the U.S. Government are irrelevant.

Once Request 6 is narrowed, it cannot accurately be characterized as a fishing expedition. See Skelos, 2018 WL 2254538, at *7. Documents in a Google account controlled by Marckstadt that concern Barrack's relationship with the UAE and KSA are likely both relevant and probative evidence of Barrack's allegedly illegal activities on behalf of the UAE. Additionally, the Government's subpoena and briefing is sufficiently specific because it proffers facts indicating the likely location and incriminating nature of this evidence.

**IV.     Request 8: Documents Regarding the use of Encrypted Platforms**

Request 8 meets all of <u>Nixon</u>'s requirements. Documents discussing the use of encrypted platforms are potentially highly probative and relevant evidence of Barrack's intent to act as a foreign agent and hide his activity. Additionally, the statements concerning the use of encrypted communications in this context are likely admissible as statements of party opponents. The Government also has already narrowed Request 8 by requiring production only when the document concerns the use of encrypted platforms to communicate with the individuals or entities listed in the Rider, or discuss the topics listed in the Rider. Any documents of this type that Marckstadt has not already disclosed are unlikely to be obtained through another method.

**V.      Requests 9 through 12: Bias**

The Court defers ruling on requests 9 through 12 until it is clear whether Marckstadt will testify at trial. The Government acknowledges that these requests seek to obtain evidence of Marckstadt's bias. Rule 17(c) authorizes service of subpoenas that are returnable at trial to obtain impeachment material. See <u>Skelos</u>, 2018 WL 2254538, at *2; <u>United States v. Seabrook</u>, No. 16-cr-467, 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017); <u>United States v. Cuthbertson</u>, 630 F.2d 139, 144 (3d Cir. 1980). However, unlike subpoenas that are returnable prior to trial, subpoenas for impeachment material are only returnable "if and when[ ] the witness who has made the statement takes the stand and testifies." <u>United States v. James</u>, No. 02-cv-778, 2007 WL 914242, at *29 (E.D.N.Y. Mar. 21, 2007) (quoting <u>United States v. Palermo</u>, 21 F.R.D. 11, 13 (S.D.N.Y. 1957)). Because it is unclear if Marckstadt will testify, the evidence of her bias sought by Requests 9 through 12 is irrelevant at this stage. As a result, until it is known whether

Marckstadt is going to testify, Requests 9 through 12 fail <u>Nixon</u>'s requirement that any evidence sought by a Rule 17(c) subpoena be admissible. <u>See</u> <u>Weisberg</u>, 2011 WL 1327689, at *7.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       September 13, 2022