RCH/SPN/HDM/CRH/MJM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
     also known as "Rashid Al Malik"
     and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

No. 21-CR-371 (S-1) (BMC)

GOVERNMENT'S REPLY BRIEF IN SUPPORT OF
MOTION *IN LIMINE* TO PRECLUDE INQUIRY ABOUT CLASSIFIED INFORMATION

                                BREON PEACE
                                United States Attorney
                                Eastern District of New York

Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant United States Attorneys

Matthew J. McKenzie
Trial Attorney
National Security Division
(Of Counsel)

The government respectfully submits this brief in reply to defendant Matthew Grimes's notice pursuant to the Classified Information Procedures Act ("CIPA") Section 5, see Dkt. No. 198 (the "CIPA 5 Notice"), and the defendant's memorandum of law in opposition to the government's motion in limine to preclude inquiry about classified information.  See Dkt. Nos. 205 and 206 (the "CIPA Opp.").

PRELIMINARY STATEMENT

Grimes's untimely Section 5 Notice states that he "intends to solicit from government witnesses testimony to confirm that none of the UAE officials referred to in this case ever mentioned Mr. Grimes' name in their own, independent communications." See CIPA 5 Notice at 4.  In the alternative, Grimes seeks a stipulation to this fact.  Id.  As the government explained in its opening brief, confirming whether or not UAE officials ever referred to Grimes in their communications calls for the public disclosure of classified information, because the U.S. Intelligence Community ("USIC") may or may not have intercepted such communications.[1]  A witness who answers whether UAE officials ever did (or did not) communicate about Grimes, without excluding classified information held by the USIC, would tend to reveal classified facts, because it would reveal the content of classified information and the means and methods of gathering such information.

The defendant does not seriously contest that an answer to his line of inquiry would necessarily reveal a classified fact, except to presume that if the government were in possession of any such communication (rather than an absence of those communications), "the government

---

[1] Any statements contained in this brief are intended only as a hypothetical description of situations to explain why Grimes' request calls for the disclosure of classified information. Nothing herein should be construed as admitting or denying that there is or is not any such classified information.

1

would not have hesitated to use them." CIPA 5 Notice at 2. But that is not correct. The government often must forgo the use of inculpatory information that is classified, because use and public disclosure may put more important national security considerations at risk. Indeed, one reason why the government ordinarily seeks to withhold classified materials in CIPA is where the materials are inculpatory and will not be used in the case-in-chief. See, e.g., United States v. Liu, No. 19-CR-804 (VEC), 2021 WL 3374535, at *3 (S.D.N.Y. Aug. 3, 2021) (approving the government's request to withhold from discovery because the "[classified] material that is relevant is inculpatory, rather than exculpatory").

Seemingly aware that such broad questions would necessarily call for classified information, Grimes reverses course, and claims that he does not seek disclosure of classified information. See CIPA Opp. at 6. To the extent Grimes is sincere that he only wishes to know about unclassified information, the government is happy to demonstrate at trial, and also in the proffer below, that there are substantial and significant communications between and about Grimes and UAE officials. Should Grimes be interested in a stipulation that reads "Mr. Grimes was in direct contact with several UAE officials and UAE officials communicated with each other about Mr. Grimes," the government would be willing to consider such a stipulation. But if Grimes insists that a witness answer whether there are any materials, including classified materials, that reflect communications by UAE officials about Grimes, the government objects both because the CIPA 5 Notice is untimely, and because whether or not such classified information exists is irrelevant and inadmissible.

ARGUMENT

I.  Grimes Failed to Comply with CIPA Section 5 Notice Requirements

   A.  Grimes' Line of Questioning Calls for Classified Information

Grimes's Section 5 Notice states that he intends to inquire whether or not "UAE officials referred to in this case ever mentioned Mr. Grimes' name in their own, independent communications." CIPA 5 Notice at 4; see also, id. at 3 (discussing request for stipulation that "the government knows of no communication between 2016 and 2018 to or from anyone in the UAE government that mentions Mr. Grimes"). As discussed previously, confirming or denying the existence of classified records held by members of the USIC is in itself a classified fact. See United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) (observing that "much of the government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all"); United States v. Stewart, 590 F.3d 93, 132 (2d. Cir. 2009) (holding that the details of the NSA's operations, including the surveillance vel non of any particular individual or group, implicate national security and the sensitive nature of the information might lie "not so much in the contents of the [information], as in the time, place, and nature of the government's ability to intercept the [information] at all.") (quoting Yunis). Thus, Grimes's inquiry, which broadly requests information about any communications by UAE officials known by the government, necessarily requests classified information.

Grimes insists that he "does not seek to 'question witnesses about the scope and content of intelligence collection related to this case,' about 'whether the USIC obtained information about any particular person,' or about the 'time, place, and nature of the government's ability to intercept' conversations from foreign officials." CIPA Opp. at 6. But this claim is belied by the very nature of the questions to which he seeks answers. Asking a government

3

witness to confirm whether he or she is aware of "any direct communications between any of the UAE officials described in the Superseding Indictment or any reference to Mr. Grimes in the communications of those officials" (id. at 1 (emphasis added)), necessarily calls for exactly the sort of classified information he claims not to seek. If a witness who is familiar with any relevant classified material (or the absence of such material) were asked about any direct communications between any UAE officials identified in the Superseding Indictment about Grimes, that person would have to reveal classified facts (i.e. whether or not the government is in possession of any such classified information about a particular person or persons). See Yunis, 867 F.2d at 623 ("[M]uch of the government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all.").

The broad scope of the question is also one that any particular witness is unlikely to be able to answer. The government does not anticipate calling any witness who would know the full scope of classified and unclassified information that has been reviewed by the government. It is possible that one or more witnesses may be familiar with some of the classified information that was withheld from discovery pursuant to CIPA Section 4, which is why the government must still protect classified interests and insist that Grimes comply with proper CIPA procedures (which he has failed to do) and will object to any line of questions that may call for a classified response.

B.  Grimes Failed to Provide Timely Notice

Grimes failed to file timely notice pursuant to CIPA § 5, and he should therefore be precluded from disclosing, or seeking the disclosure of, classified information at trial. Grimes states that Section 5 permits notice "as soon as possible," (see CIPA Opp. at 5), but elides the fact that this language is further limited by the statute to no later than thirty days prior to trial. 18 U.S.C. App. 3, § 5(a). Grimes does not dispute that the deadline, thirty days prior to trial, was

4

August 20, 2022, and does not dispute that he only filed his notice on September 8, 2022. The failure to meet his deadline is a basis to preclude this line of questioning. See United States v. Badia, 827 F.2d 1458, 1464–66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA Section 5); United States v. North, 708 F. Supp. 389, 392 (D.D.C. 1988) (precluding use of classified information for failure to adequately comply with Section 5 notice requirements).

Grimes offers several excuses for his delayed notice, including that he was pursuing Rule 17 subpoenas, moved to compel discovery of classified information, and was seeking a stipulation from the government about these facts. See CIPA Opp. at 7. Grimes was specifically advised several months before he began any of these approaches that CIPA alone governed the disclosure and use of classified materials, and that he was required to file a Section 5 Notice no later than thirty days before trial if he wanted to cause the disclose of any such information. See CIPA Section 2 (Dkt. No. 54) (filed on Oct. 29, 2021). The fact that Grimes's sophisticated counsel, who also has past familiarity with CIPA procedures, chose to ignore the requirements of Section 5 because he favored some alternative approach is not a valid excuse. Grimes's counsel could have filed a CIPA 5 Notice at any point since the filing of the CIPA Section 2 Notice in October, and still could have pursued these alternative (albeit improper) methods to obtain classified discovery. But he chose not to do so. The consequences of Grimes's deliberate decision to forgo Section 5 Notice is clear. Pursuant to CIPA Section 5(b), the Court should preclude the defendant's requested line of inquiry that seeks to disclose classified information.

II.     The Existence of Classified Information is Neither Relevant Nor Admissible

In addition, the classified information that Grimes seeks to illicit is not admissible. It bears repeating that this Court has already properly considered the classified information at issue in this case pursuant to Section 4 of CIPA, and concluded that that it could be withheld from the

5

defendants because the information was not "helpful or material to the defense" or "discoverable under Brady . . . Giglio . . . or Federal Rule of Criminal Procedure 16" and that any potential discovery value was "outweighed by the potential danger to the national security that might ensure after their disclosure." CIPA 4 Order at 3. Furthermore, the evidence is not relevant, would be more prejudicial than probative, and, as discussed below, Grimes is already in possession of evidence that will answer the ultimate questions he is seeking to answer – namely, whether there is evidence that Grimes directly communicated or interacted with UAE officials identified in the Superseding Indictment or whether his name was raised in discussions with those UAE officials.

      A.      <u>The Classified Evidence is Not Relevant</u>

The existence or non-existence of intercepted communications is simply not relevant to the charges. Grimes' suggestion to the contrary amounts to an argument that the USIC has an omnipresent ability to collect all communications of all people across the globe and that any theoretical lack of interception amounts to evidence of innocence. The weakness of this inferential leap is again demonstrated by the fact that the government has evidence in its unclassified holdings, which it has produced as Rule 16 discovery and marked as exhibits for trial, that Grimes directly communicated and met with UAE officials and that his name was discussed by UAE officials. Any theoretical absence of intercepted communications by the USIC would thus clearly not demonstrate that such communications did not occur, but rather simply that they were not intercepted by the USIC.

This underscores the point that whether or not the USIC intercepted such communications is an area far outside the jury's concern. <u>See, e.g.</u>, <u>United States v. Carton</u>, No. 17-CR-680 (CM), 2018 WL 5818107, *3 (S.D.N.Y. Oct. 19, 2018) ("[T]he failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime

6

with which he has been charged.") (quoting United States v. Saldarriaga, 204 F.3d 50, 53 (2d Cir. 2000)). Further, to properly respond to this argument, the government would have to detail the methods and priorities of the USIC, thus disclosing highly sensitive details about the USIC's capabilities. This is exactly the type of inquiry CIPA was designed to prevent. See United States v. Pappas, 94 F.3d 975, 799 (2d. Cir. 1996) (explaining that CIPA was designed to "minimize the problem of so-called graymail—a threat by the defendant to disclose classified information in the course of trial—by requiring a ruling on the admissibility of the classified information before trial.").

      B.      The Prejudicial Effect of the Classified Evidence Outweighs any Probative Value

Under either possible scenario, the classified testimony Grimes seeks to admit is far more prejudicial than it is probative. If witnesses confirm the existence of classified information, Grimes would be highly prejudiced because it would invite the jury to conclude that the USIC possessed classified, inculpatory evidence without providing Grimes the ability to meaningfully probe the weight or authenticity of the records. At the same time, confirming the existence of classified records could damage national security by confirming intelligence sources and methods. See Yunis, 867 F.2d at 623. If the government witnesses deny the existence of the records, with no further context, it would invite the jury to conclude that these records do not exist because the alleged communications do not exist, as opposed to a myriad of other reasons ranging from collection gaps to USIC capabilities to USIC priorities. This, too, would harm national security by confirming intelligence sources and methods. Id. Either way, the prejudicial effect of the evidence far outweighs any probative value.

7

C. Grimes's Communication with UAE Officials is Demonstrated by Unclassified Discovery

Grimes concludes his brief by challenging the government to point to any evidence that would undermine his central thesis – that "there are no direct communications to Mr. Grimes from UAE officials mentioned in the Superseding Indictment nor that he was mentioned in communications between those UAE officials." CIPA Opp at 8. Although the defense "is not entitled to a preview of the government's case," United States v. Reyes, No. 90 CR 584, 1990 WL 201342, at *2 (S.D.N.Y. Dec. 4, 1990), the government accepts the challenge, such as it is. At trial, the government anticipates it will introduce: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In light of all of this evidence of direct communications and contacts between Grimes and UAE officials mentioned in the Superseding Indictment and other indicia that Grimes

8

was mentioned in communications between these UAE officials, Grimes's request to inquire of the government as to whether the USIC intercepted communications is especially irrelevant. To the extent Grimes remains interested in a stipulation on this issue, an accurate stipulation, based entirely on the unclassified evidence already produced in discovery, would state that "Matthew Grimes was repeatedly in contact with multiple UAE officials, and UAE officials also discussed Grimes and his work for the UAE amongst themselves."

## CONCLUSION

For the foregoing reasons, the Court should preclude the defendants from asking any questions intended to elicit information about the scope, nature, or substance of intelligence information held by members of the USIC.

Dated:      Brooklyn, New York
            September 14, 2022

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

                                By:     /s/
                                        Ryan C. Harris
                                        Samuel P. Nitze
                                        Hiral D. Mehta
                                        Craig R. Heeren
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

                                        MATTHEW G. OLSEN
                                        Assistant Attorney General
                                        Department of Justice
                                        National Security Division

                                By:     /s/
                                        Matthew J. McKenzie
                                        Trial Attorney

9