# EXHIBIT 1

# ADVISORY COMMITTEE
## ON
# EVIDENCE RULES

**Washington, D.C.**
**April 19-20, 2001**

*Online Materials*

As to a proposed amendment to Rule 902(6), Committee members expressed the view that online materials might be more easily forged than hardcopy. Therefore it did not make sense at this point to provide for self-authentication of online materials. The consequence of not including online materials under Rule 902 is simply that they must be authenticated under the circumstances, as provided in Rule 901. The question is: which party should have the burden on the question of authenticity? Given the fact that technological advances have increased the risk of forgery, the Committee determined that it was generally appropriate to leave the burden of showing authenticity to the proponent of the evidence. Close questions should be called in favor of an actual showing of authenticity under Rule 901, rather than providing for self-authentication under Rule 902. Thus the Committee concluded that it was not appropriate at this time to amend Rule 902(6).

One Committee member argued that the risk of forging any document or picture has increased due to technological advances. He suggested that the Evidence Rules should be amended to protect against this heightened risk. Committee members agreed that the potential for forgery has increased, and that this increased potential counsels against increasing the scope of the Rule 902 grounds for self-authentication. Committee members, however, generally rejected the proposition that concern over the increasing potential for forgery should lead to any amendment of an Evidence Rule. The problem of forgery can be handled adequately by the principles of Rule 901--the possibility that a computerized document or picture might be forged is simply a factor that a court takes into account in determining whether the evidence is what the proponent says it is under Rule 901.

In sum, the Committee resolved not to proceed with an amendment to Rule 902(6). It reserved the question whether to proceed with an amendment to Rule 902(2), making Committee consideration dependent on a showing by the Department of Justice that the current Rule is posing a substantial problem in practice for United States Attorneys.

## Rule 608(b)

At the October, 1999 meeting of the Evidence Rules Committee, the Reporter had been directed to prepare a report on whether the extrinsic evidence limitation of Rule 608(b) should be amended. The problem perceived is that as written, Rule 608(b) prohibits extrinsic evidence when used to impeach a witness' "credibility". Read literally, this would mean that extrinsic evidence could never be offered to prove any aspect of a witness' credibility. But the Supreme Court has made clear in *United States v. Abel* that the term "credibility" really means "character for truthfulness." So if the proponent is using the extrinsic evidence for impeachment on any ground other than an attack on character (specifically, to show bias, prior inconsistent statement, contradiction, or lack of capacity), the extrinsic evidence limitation of Rule 608(b) is not

4

applicable. The Reporter was directed to provide a background memorandum on whether the use of the overbroad term "credibility" in Rule 608(b) has created a problem for the courts.

The first question for the Committee was whether the fundamental approach that was intended to be embodied in the Federal Rules (as indicated by *Abel*) is indeed the correct approach to the admissibility of extrinsic evidence offered for impeachment. That approach distinguishes a character attack (as to which extrinsic evidence is absolutely inadmissible) from all other forms of impeachment (as to which extrinsic evidence can be admitted subject to Rule 403). Why distinguish an attack on the witness' character from other forms of attack? The Committee unanimously agreed that the basic approach of the Federal Rules—the distinction between an attack on the witness' character and other forms of impeachment—is correct and should not be changed. An attack on a witness' character for truthfulness can be overbroad and extraneous to the issues in the case; extrinsic proof of bad acts will almost always result in a waste of time and confusion of the jury on a collateral matter. It makes sense, therefore, to employ a categorical rule of exclusion of extrinsic evidence when offered to attack a witness' character for truthfulness. Extrinsic evidence of other forms of impeachment might well be more central to the issues in the case (e.g., contradiction of a material fact, or an inconsistency in a prior statement that is material to the witness' testimony), and so it makes sense to take a case by case approach under Rule 403.

The next question for the Committee was whether Rule 608(b) should be amended to accord with what the Rule is supposed to mean--i.e., that extrinsic evidence is absolutely prohibited when offered to prove a witness' character for truthfulness, and that Rule 403 governs use of extrinsic evidence for all other forms of impeachment. The Committee noted that many of the reported appellate cases apply the Rule correctly, even though the Rule uses the overbroad term "credibility". The fact remains, however, that court opinions can be found that misapply the Rule by invoking it to preclude extrinsic evidence offered for non-character forms of impeachment. Committee members also expressed concern that litigants are misapplying the Rule at the trial level, and that many litigants do not proffer extrinsic evidence for non-character impeachment because they think that the Rule on its face prohibits it. A motion was made to recommend some kind of an amendment to Rule 608(b) to carry out the original purpose of the rule, i.e., that the limitation on extrinsic evidence applies only to an attack on the witness' character for truthfulness, and that admissibility of extrinsic evidence for other forms of impeachment is governed by Rule 403. That motion passed unanimously.

The question then shifted to how the Rule should be amended to best accomplish its original purpose. The Committee considered three alternatives. One alternative would simply substitute the term "character for truthfulness" for the word "credibility" in Rule 608(b); the Committee Note to this alternative would specify that the use of extrinsic evidence to prove prior inconsistent statement, bias, contradiction and lack of capacity is governed by Rules 402 and 403. The second alternative would substitute "character for truthfulness" for "credibility" and would also add a new subdivision specifying that subject to Rule 403, extrinsic evidence could be used to prove prior inconsistent statement, bias, contradiction or lack of capacity. The third

alternative would combine either of the first two alternatives with a provision that where extrinsic evidence is prohibited, it cannot be referred to directly or indirectly. This proposed language is intended to prevent an abusive practice by which parties seek to smuggle in extrinsic evidence by referring to consequences suffered by the witness for his alleged misconduct (e.g., that the witness had been suspended or disciplined for the underlying misconduct).

Some Committee members were favorably disposed to the alternative that would specifically mention the other forms of impeachment in the text of the Rule. But most Committee members expressed reservations about this proposal. These members were concerned that by specifically mentioning the basic forms of impeachment, the drafters might inadvertently leave out other forms of impeachment, creating confusion for courts and litigants. These members believed that the better approach was to mention the standard non-character forms of impeachment in the Committee Note, and to specify that the admissibility of extrinsic evidence for these forms of impeachment is governed by Rules 402 and 403, not by Rule 608(b). All Committee members believed that if Rule 608(b) is going to be amended, it would be good policy to specify that extrinsic evidence cannot be used, either directly or indirectly, when offered to impeach the witness' character. Permitting the cross-examiner to refer to the consequences of a witness' misconduct, such as suspension, results in an impermissible end-run around the extrinsic evidence limitation, and also brings inadmissible hearsay before the factfinder.

A vote was taken on which alternative to propose for further consideration at the October, 2000 meeting. Alternative 3 (substituting the phrase "character for truthfulness" for the word "credibility"; specifying in the Committee Note that extrinsic evidence offered for non-character impeachment is governed by Rules 402 and 403; and providing that extrinsic evidence cannot be referred to when the impeachment is for character) was approved by a 5 to 3 vote (the three "nays" favoring the more detailed alternative including the other forms of impeachment in the text of the Rule). The Reporter was directed to prepare a draft proposed amendment to Rule 608(b) and draft committee note, taking the approach  tentatively agreed to by the Committee.

### Rule 803(18)

The Committee considered a proposal by District Judge Grady of the Northern District of Illinois,  to delete or amend the last sentence of Evidence Rule 803(18) to permit the jury to take a learned treatise into the jury room. Judge Shadur noted that the current Rule states that a learned treatise can be read into evidence but cannot be admitted as an exhibit. Judge Shadur stated that one of the reasons often mentioned for preventing learned treatises from being admitted as an exhibit is that the jury might rummage through the treatise in the jury room, without proper guidance. He and other Committee members noted, however, that any risk of rummaging could be alleviated by redacting those portions of the treatise that have not been admitted. One Committee member pointed out that the point of any amendment would be to permit the jury to review the learned treatise in the jury room. However, it would be