

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

| | |
|---|---|
| RCH/SPN/HDM/CRH<br>F. #2018R01309 | *271 Cadman Plaza East<br>Brooklyn, New York 11201* |

October 5, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Thomas Joseph Barrack, et al.
      Criminal Docket No. 21-371 (S-1) (BMC)

Dear Judge Cogan:

   The government respectfully moves pursuant to Federal Rule of Criminal Procedure 16(b)(1)(A)(ii) and the interests of fairness, reciprocity, and trial efficiency to compel the defendant Thomas Barrack to produce to the government all exhibits that he intends to introduce in his case-in-chief at trial, including during cross-examination of government witnesses. It has become clear since trial began that Barrack's failure to comply with his obligations, or with the mutual agreement among the parties regarding the timely exchange of trial exhibits, has been strategic in nature—essentially amounting to trial by ambush and resulting in clear trial inefficiencies. Courts routinely issue orders meant to avoid such inefficiencies. Accordingly, the government moves for an order compelling Barrack to produce his "case-in-chief" exhibits to the government forthwith.

   I. <u>Background</u>

   Two months ago, on August 5, 2022, the parties exchanged preliminary exhibits by mutual agreement and in light of the Court's order endorsing the government's proposed disclosure schedule for witness lists, witness statements, and exhibits several weeks before trial. <u>See</u> ECF No. 110, at 1, 4. The parties subsequently agreed to provide three days' notice of witnesses to be called (by the government during its case, by the defense during any defense case) and of particular exhibits to be introduced on upcoming trial days. The government believed the defendants had complied with these agreements until the night before the start of trial, when the government learned that both defendants intended to use PowerPoint presentations displaying exhibits that had not previously been produced to the government. <u>See</u> ECF No. 259 (letter moving for order compelling disclosure of slides to be used during opening statements).[1]

---

[1] In addition, on September 21, 2016, at approximately 10:49 PM, counsel for Barrack disclosed for the first time ten exhibits to the government, described as "case-in-chief" exhibits,

Since that date, counsel for Grimes has disclosed numerous additional defense exhibits to the government and, more importantly, has represented to the government that Grimes has disclosed all, or nearly all, of the exhibits he may seek to introduce at trial, including through cross examination where not cabined to impeachment. The government very much appreciates counsel for Grimes's decision to respect the agreement of the parties and the effort towards basic trial fairness, efficiency, and reciprocity. Barrack's counsel, in contrast, has consistently refused to make any such representation as to the state of their compliance with discovery obligations or to provide straightforward answers to the government's questions regarding defense exhibits, other than to repeat variations of the statement that they will produce documents to be used as case-in-chief exhibits once they make their final determination.

The damage to trial fairness and efficiency posed by counsel for Barrack's approach came to a head during the cross-examination of Special Agent Sidaros yesterday. During cross-examination, Barrack's counsel repeatedly placed on the government's table documents that had never been disclosed to the government, including a 100-page transcript of a C-SPAN video the publication date of which was not immediately clear, and moved for them to be admitted into evidence immediately. Notably, counsel for Barrack had not provided a copy of these materials in advance for the Court, either. Given the length of the transcript, the government was placed in a very difficult position—forced to attempt to make a reasoned decision involving a lengthy exhibit of some magnitude while simultaneously addressing the Court's valid concerns about the jury's time. See Tr. at 1786:22-24 ("You guys you are conferring a little too much, we have to move it a little faster. What do you want to do?").

Although the Court clarified that certain exhibits were admitted for a limited purpose – in particular, those to which the government objected or whose admissibility the government sought to limit – the Court also suggested that, absent government objection, the exhibits were coming in for all purposes, not just for impeachment. See Tr. at 1776:15-18 ("You asked for a limiting instruction after it was already admitted, so I'm going to give him some leeway").

II. <u>Legal Standard</u>

Federal Rule of Criminal Procedure 16(b)(1)(A)(ii) requires a defendant to produce to the government all documents and records if "the defendant intends to use the item in the defendant's case-in-chief at trial." Further, "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant." <u>United States v. Napout</u>, No. 15 CR 252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017). "[T]here is general consensus among courts that if a defendant seeks to present affirmative (non-impeachment) evidence through a government witness during the government's case in chief, the defendant's presentation of evidence during such an examination should be treated as part of

---

that counsel for Barrack intended to introduce through a government witness scheduled to testify the very next day. In addition, the labels on the exhibits received to date strongly suggest that Barrack is withholding additional, pre-marked exhibits.

2

the defendant's 'case in chief' for purposes of the defendant's disclosure obligations under Rule 16." Id. Where a defendant fails to timely disclose such exhibits to the government, the Court may exclude those exhibits as untimely under Rule 16. See id. at *8. That is because, as Judge Chen recently explained in Napout:

> "[W]here a defendant cross-examines a government witness to buttress[ ] her theory of the case, rather than to impeach the testimony given by the witness on direct examination, [t]he cross-examination ... is properly seen as part of the defendant's case-in-chief."

Id. at *7 (internal quotation marks and citation omitted). Indeed, "this interpretation of Rule 16 has been adopted by almost every district court to consider the issue." Id. (citing United States v. Hsai, No. 98-cr-057, 2000 WL 195067, at *2 (D.D.C. Jan. 11, 2000); United States v. Swenson, 298 F.R.D. 474, 478 (D. Idaho 2014); United States v. Holden, No. 13-cr-444, 2015 WL 1514569, at *5 (D. Or. Mar. 19, 2015); United States v. Larkin, No. 12-cr-319, 2015 WL 4415506, at *6 (D. Nev. July 20, 2015); United States v. Aiyaswamy, No. 15-cr-568, 2017 WL 1365228, at *5 (N.D. Cal. Ap Cal. Apr. 14, 2017)).

Although reciprocal disclosure obligations do not extend to documents used solely to impeach, "the defense should not be permitted to circumvent its disclosure obligation by presenting exhibits during the cross-examination of government witnesses or by characterizing an exhibit as being offered for impeachment" when it is used to "buttress her theory of the case," Napout, 2017 WL 635729 at *7, or "addresses the substance of the charges," United States v. Sineneng-Smith, No. C-10-00414 RMW, 2013 U.S. Dist. LEXIS 89843 at *8 (N.D. Cal. June 24, 2013). Thus, evidence "that is offered primarily to prove or disprove an element of a claim or defense is not evidence that is offered to impeach the credibility of a witness and thus is not impeachment evidence; it must be disclosed in accordance with Rule 16." United States v. Heine, No. 3:15-CR-238-SI, 2017 WL 4423408, at *8 (D. Or. Oct. 5, 2017) (emphasis in original); see also United States v. Liberto, 565 F. Supp. 3d 739, 746 (D. Md. 2021) (same). In addition, where the discovery in a case is voluminous, it is not sufficient for the government or defense to merely state that the opposing party is in possession of the documents that may be introduced as exhibits, and courts often direct exchanges of exhibits in advance of trial in the interests of efficiency. See, e.g., United States v. Giffen, 379 F. Supp. 2d 337, 344 (S.D.N.Y. 2004).

III.   Argument

Since trial began, counsel for Barrack has withheld case-in-chief exhibits from the government, despite the fact that the parties mutually agreed to disclose, in good faith, exhibits two months ago, on August 5, 2022.[2] The government does not, as argued by Barrack in his response to the government's motion seeking limitations on admission of exhibits during cross

---

[2] The parties have continued to supplement their exhibit lists, as is to be expected during the course of trial, and the government recognizes that such adjustments with respect to specified exhibits will continue. The government, for its part, has disclosed and identified all supplemental exhibits (i.e., those not identified in the original exchange of exhibits) well in advance of any particular witness's testimony.

3

examination, seek "an advance roadmap of the defense's strategy." ECF No. 281 at 3. But the government is entitled to disclosure of exhibits to be introduced into evidence on cross examination where, as with certain exhibits introduced on October 3, 2022, they are plainly "offered primarily to prove or disprove an element of a claim or defense" and not to impeach the credibility of the testifying witness. Heine, No. 3:15-CR-238-SI, 2017 WL 4423408, at *8. It was partly for this reason that the government filed its motion urging the Court to distinguish between exhibits introduced as extrinsic evidence of impeachment, which must satisfy particular, narrow standards relating to the credibility of the testifying witness and may be accompanied by an instruction limiting their use, from documents intended more broadly to advance defense theories of the case. The government does not seek – and, should the defendants put on a case, does not intend to provide – advance notice of pure impeachment exhibits, but case-in-chief exhibits must be produced and identified in advance of a witness's testimony. Barrack's counsel has repeatedly introduced such exhibits into the record at trial with no notice to the government or the Court.

During the cross examination of Special Agent Sidaros, Barrack introduced numerous exhibits that have essentially no impeachment value – and, in any event, satisfied none of the standards for introduction of extrinsic impeachment evidence – and thus were, in their effect, case-in-chief evidence.[3] See Heine, No. 3:15-CR-238-SI, 2017 WL 4423408, at *8. For example, Barrack introduced evidence of a video played on C-SPAN regarding the removal of a portion of the Republican Party Platform regarding the declassification of certain pages of a Congressional report on 9/11. The clear implication of this evidence is that the information regarding the change to the platform was not "confidential," as described by Barrack in emails forwarding information about the change. This is a perfectly tenable argument to make, of course, based on a case-in-chief exhibit meant to "disprove an element" of the government's case or to "prove . . . an element of a . . . defense," id., and the government does not here argue that its admission was improper through Agent Sidaros, particularly in light of the leeway the Court has indicated it intends to give.[4] The government wishes to underscore, however, that the nature of the defense questioning, and the nature and probative value of the video itself, made clear that the video was in fact a case-in-chief exhibit disguised as an impeachment exhibit. As such, it should have been provided in discovery and marked as an exhibit identified for the government in advance. See Giffen, 379 F. Supp. 2d at 344 ("The Government is entitled to reciprocity" from the defendants); cf. United States v. Ulbricht, No. 14 CR 68 (KBF), 2015 WL 413318, at *3 (S.D.N.Y. Feb. 1, 2015) ("A defense preference for trial by ambush is legally unsupportable.").

It is no answer to state, as Barrack's counsel has repeatedly, that they have yet to decide which exhibits they will seek to admit. See e.g., United States v. Osuji, No. CRIM.

---

[3] If Barrack takes the position that these were truly impeachment exhibits, the government hereby requests, and assumes the defense will not object to, an instruction that the jurors may not consider the documents put into the record for any other purpose than assessing the credibility of Agent Sidaros.

[4] Because the video was admitted for impeachment purposes, the government will object to any such argument based on this exhibit to the extent the argument is not directed at the credibility of Agent Sidaros's testimony, but counsel has already advanced arguments about the exhibit, through his questions, aimed more broadly at its core defense.

4

3:06CR415, 2007 WL 4118386, at *4 (W.D.N.C. Nov. 16, 2007) ("At this late date, the Defendant cannot be heard to say that no decisions have been made with respect to which witnesses and documents will be introduced at trial."). To state the obvious, counsel certainly had decided which exhibits it would seek to admit the night before (and likely far earlier) they began cross-examination of Special Agent Sidaros. Yet their practice has been to hand hard copies to the government simultaneous with counsel's request for admission. While the burden of proof lies squarely with the government, that does not mean that Barrack's counsel should be permitted to dump voluminous, non-impeachment exhibits on the government's table for the first time and then force the government to make rushed decisions on possible evidentiary objections, on the fly and in the presence of the jury. The government is not in a position to review a 107-page transcript for possible objections – hearsay, relevance, authenticity, and so on – in a handful of minutes. The basic scope of the government's case is hardly a mystery at this point, and the time has long past for disclosure to the government.

The government therefore respectfully requests that the Court order the defendants to identify and produce all case-in-chief exhibits forthwith or risk their preclusion at trial. See, e.g. Giffen, 379 F. Supp. 2d at 344 (directing defendant to provide trial exhibit list and copies of exhibits to government "at the start of trial or no later than thirty days prior to the start of the Defendant's case"); see also United States v. Mavashev, No. 08 CR 902 (DLI), 2010 WL 670083, at *4 (E.D.N.Y. Feb. 23, 2010) ("[T]o the extent defendant intends to use any documents, objects, reports of examinations, or tests in his case-in-chief at trial, he is ordered to comply with the government's request immediately, i.e., no later than twenty-four (24) hours following the issuance of this Order. Failure to do will result in such evidence being precluded. See Fed. R. Crim. P. 16(d)(2)(C)"); United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991) (district court did not abuse its discretion in precluding evidence during trial because "[d]efense counsel planned to use the documents in their case-in-chief and was obliged to disclose the documents under Rule 16(b)[;] . . . . Permitting the defense to use the documents, particularly without the prosecution ever having seen them and despite the earlier government requests for those documents, would have given the defense an unfair advantage."); United States v. Jasper, No. 00 CR 825, 2003 WL 223212, at *1 (S.D.N.Y. Jan. 31, 2003).

    IV.    Conclusion

For the reasons stated herein, the government respectfully moves to compel the defendants to produce to the government all exhibits that it intends to introduce in its case-in-chief at trial, including during cross-examination, pursuant to Federal Rule of Criminal Procedure

5

16(b)(1)(A)(ii) and "based on the policy concerns of Rule 16 and principles of fairness." <u>Giffen</u>, 379 F. Supp. 2d at 344.

<div style="margin-left: 50%;">

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By: /s/
Matthew J. McKenzie
Trial Attorney

</div>

cc: Counsel for Thomas Joseph Barrack (by ECF)
    Counsel for Matthew Grimes (by ECF)
    Clerk of the Court (BMC) (by ECF)